Mendenhall *vs.* Steckel and Wife, *et al.*

(Decided February 15th, 1878.)

SARAH R. MENDENHALL *vs.* SOLOMON A. STECKEL, and others.

DEEDS.

*Abatement—Consideration of Deeds—Failure of Consideration—When quantity will be regarded as a material consideration, in cases of sales of land—Mistake as ground for decree to reform Deeds—Clear and satisfactory proof required.*

S. A. S. executed to S. R. M. a mortgage upon certain real estate to secure the payment of a balance of purchase money. The consideration for the mortgage was the conveyance of the land purchased by the mortgagor from the mortgagee, and which was described in the deed of conveyance and believed by the purchaser, upon the representation of the vendor, to contain one hundred and eighty-seven acres. The land was afterwards surveyed and found to contain only about one hundred and fifty-seven acres, the deficiency in quantity being of greater value than the amount secured by the mortgage; and upon a bill filed to foreclose the mortgage and for sale of the mortgaged property, the defendant relied upon the deficiency in the quantity of the land as a failure of consideration for the mortgage. HELD:

1st. That the vendee is clearly entitled to an abatement of the purchase money for the deficiency.

2nd. Where land is sold in gross, for a sum certain, upon a statement of the number of acres, quantity must be regarded as a material consideration with the vendee.

3rd. Mistake is well recognized as a sufficient ground upon which to decree the reform of a deed, but the Courts exercise their power in this respect with great caution, and only upon very clear and satisfactory proof.

APPEAL from the Circuit Court for Cecil County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, STEWART, BOWIE and BRENT, J.

*James Black Groome* and *Albert Constable,* for appellant.

The questions arising in this case are:

1st. Can the defendant, having accepted the deed, entered into possession and subsequently sold the land, *now* be permitted to bring forward this defence?

2nd. This being a bill to obtain the *ordinary foreclosure* decree, will a Court of equity in this proceeding, give him the relief he asks, *or leave him to his remedy at law?*

3rd. What was the true agreement between the parties?

4th. Has there been a mistake by the conveyancer?

1st. Is this defence now open to Steckel, he having accepted the deed and entered into possession; and subsequently by deeds containing the words " more or less," actually sold and conveyed the said farm, as and for one hundred and eighty-seven acres?

The general rule is, that *after a conveyance,* the purchaser will be left to his remedy on the covenants of his deed. *O'Kill vs. Whitaker,* 2 *Phill.,* 338.

In *Dart's Vendors and Purchasers,* (*3rd Ed.,*) 503, it is said that with " some few special exceptions, a purchaser,

after the conveyance is executed by all necessary parties, has no remedy at law or in equity, in respect of any defects either in the title to, or *quantity* or quality of the estate." And the same doctrine is laid down in *Lord St. Leonard's Vendors and Purchasers*, (13*th Ed.*,) 232, where the writer remarks that a conveyance executed will not easily be set aside, without fraud or some unconscionable circumstance being proved, whence fraud might be implied. In the same work, (*p.* 197,) it is also stated that after contract executed, "a bill cannot be filed simply for compensation, *e. g.*, where the rental of an estate was represented higher than its actual amount." *Newham vs. May*, 10 *Price*, 117 ; *Powell vs. Clark*, 5 *Mass.*, 355 ; *Roat vs. Puff*, 3 *Barbour, N. Y.*, 353.

Again, Steckel does not deny that he has sold the land, and that *he has the money for one hundred and eighty-seven acres in his pocket*. The deeds by which he conveyed the property to his purchasers, have each the qualifying expression "more or less" to the number of acres. If our right to a foreclosure of the mortgage is resisted, as it can only be, on the ground of a failure of consideration, what standing has Steckel in a Court of equity? Steckel, with the money for one hundred and eighty-seven acres in his pockets, and qualifying expressions in his deeds, by which he is forever protected against his purchasers. *Belshaw vs. Bush*, 11 *Common Bench Reports*, 191.

2nd. As to the *forum:* It is clear under all the authorities, that after a conveyance, a bill cannot be filed simply for compensation. *Sugden* so states in his work on *Vendors and Purchasers*, (13*th Ed.*, 197,) and see the authorities there quoted.

Compensation ordinarily is decreed in equity only as incidental to other relief sought by the bill and granted by the Court. Will then the fact, that we ask for a foreclosure of this mortgage, entitle the defendant to that for which he could not file a bill ?

Compensation is given in equity to a defendant only in cases where the Court will impose terms on a plaintiff as the condition of its aid, on the principle that he who seeks equity must do equity. But it has been decided that a *legal mortgagee,* who asks the ordinary foreclosure decree, does not seek equity in that sense, and will be entitled to his decree *without terms*—that the relief he seeks, is not *relief* in the *sense of that principle.*

This then is not the case of a party coming into Court under circumstances which entitle the Court to impose *conditions* on him. Even the defence most highly favored, that a defendant is a *bona fide* purchaser, has been held not to be applicable to cases where there is a *legal mortgagee,* so as to say that he is not entitled to enforce the equitable remedy incidental to his security against a subsequent purchaser without notice ; the equitable remedy is an inseparable *incident* to the *legal right,* and cannot be curtailed or modified. *Finch vs. Shaw,* 19 *Beaven,* 500 ; *Colyer vs. Finch,* 5 *H. L. Cases,* 905.

3rd. As to the agreement between the parties :

On the 4th June, 1867, the agreement (describing the land as *about* one hundred and ninety acres,) on which the deed was afterwards founded, was signed, sealed and delivered.

The persistent attempt of Steckel in this case has been to have the *conversations* preceding the signing of this agreement treated as the true contract.

Steckel says, that prior to the 4th June, Stroud, who, as agent of Mrs. Mendenhall and equitable owner of the land, conducted the sale, represented to him that the farm " Choice," contained one hundred and ninety acres.

To this Stroud says, in answer to the 9th interrogatory, " *I made no representations to Mr. Steckel as to the exact quantity of land ;* I read the contents of the deed to him, or rather made him acquainted therewith ; that deed contained the words ' more or less,' after the number of acres

mentioned ; I had no other authority for knowing the exact number and *always referred to the deed.*"

The deed here spoken of, is the deed from James Stroud and Hannah Stroud, and describes the land as containing two hundred and thirteen acres, more or less. Mrs. Mendenhall afterwards, and before the sale to Steckel, sold twenty-six acres, leaving at the date of the sale to him, one hundred and eighty-seven acres, more or less.

Steckel admits he signed that agreement, and that it was made and signed *subsequent* to the *alleged* representations of Stroud, as to the quantity.

Now, as to that agreement.

The description there is, " all that certain farm situate in Cecil county, in the State of Maryland, and described upon the records of said county as the ' Choice ' farm, containing *about* one hundred and ninety acres, bounded," &c.

Steckel alleges that Stroud made the absolute unqualified representation that " Choice " contained one hundred and ninety acres. Stroud denies this. The *written contract made subsequent to the alleged representation ought therefore to decide between them,* even if it was allowed to Steckel thus to contradict his agreement under seal.

In *Tyson vs. Hardesty*, 29 *Md.*, 305, the facts are very like this case. There was the same conflict of testimony. The Court say, (on page 309,) " But there are certain well settled rules which govern Courts of equity in dealing with cases of this kind, that seem to us to lie at the foundation of this case and to control its decision. Here the contract of sale was *reduced to writing* and signed by the parties, and its terms must have a *controlling* influence not only in determining their rights, but also in *weighing the conflicting evidence,* as to the preliminary negotiations between them." Then again, " the principle deduced from these cases is, that when by the contract the qualifying words ' more or less,' or *equivalent* expressions have been used, they import that quantity did not enter into

the essence of the contract of sale, and in the absence of *fraud*, neither party can claim relief either for a deficiency or a surplus. Applying this rule to the case before us, we are of opinion that the appellee has failed to establish sufficient ground to entitle him to an abatement in the price stipulated by the contract. The evidence furnishes no ground whatever for the imputation of any *fraudulent or wilful misrepresentation* on the part of the vendor ; the proof shows, that he was ignorant of the exact quantity of land contained in the farm.''

In all these respects *Tyson vs. Hardesty* is strikingly like our case.

In no view ought this defence of Steckel prevail; it has neither law, equity or fact, to sustain it. The mere consideration of the written agreement is alone sufficient to strip it of every color of justice. Steckel does not pretend that he did not sign that contract, or that the qualifying expression · "about" was by mistake inserted in that agreement; he cannot · deny that at the time he affects to have been so solicitous as to the exact quantity, the carefully prepared agreement, made under his instruction, only *estimated the quantity.* He does not deny that he gave that agreement to the conveyancer to prepare the deed ; nor does he pretend that he gave him any other or different instructions.

In the absence of fraud, Stroud had the right to have the deed prepared in accordance with the written contract. It was his legal right. He could insist against the remonstrance of Steckel, that the qualifying expression "*about*" should go in the deed.

If then such was his right at that time, *when* and *how,* we ask, did he lose it ?

Did the fact that he furnished the draughtsman with the original deed, to make an accurate description, deprive him of that right? According to Steckel's idea, both were lost, the right to the qualifying expression "*about,*"

contained in the contract, and the qualifying expression "more or less," contained in the original deed. And this is pretended, because Mr. Aldrich, the conveyancer, has made a clerical error in copying.

We respectfully ask; that the decree of the Court below, which works such harsh injustice to Mrs. Mendenhall, and which debars her from *all remedy* on her security, without any default upon her part—and security too, taken in exchange for the absolute, unimpeachable security, of the legal title to "Choice," which was in her, and which she transferred to Steckel, *on the faith of this mortgage,* should be reversed.

*Wm. J. Jones,* for appellee.

In this case the appellees contend that the decree of the Circuit Court for Cecil County should be affirmed.

Much of the appellant's argument is an effort to show that a mortgagor, or those claiming under him, purchasers of his equity of redemption, have no right to set up as a defence to the enforcement of the mortgage, a want of consideration in the mortgage. Surely authorities are not needed to settle this view of the case. Suppose it be conceded that there is such a deficiency as would entitle the purchaser to a deduction of five hundred dollars, will it be contended that the present owners of the land, Hall, George W. McVey, Absolom McVey and Dieter could not file their bill, tendering the five hundred dollars still due, and asking a release of the mortgage? And does any one doubt for a moment that their prayer would be granted? *Banks vs. McClellan,* 24 *Md.,* 62.

It is conceded in this case, that the mortgage debt which the complainant seeks to recover, was a balance of purchase money of land conveyed by the complainant to the defendant, Steckel, by deed dated the 19th day of July, 1867 ; and that no consideration except this exists, or ever did exist, for the said mortgage.

An examination of this deed shows that the grantor, the complainant, professes to convey to the defendant a tract of land, "containing, exclusive of deductions, one hundred and eighty-seven acres," and gives to defendant a covenant of special warranty. It is clearly proven by the testimony of James McCauley, a competent surveyor, that the tract only contained one hundred and fifty-seven acres and sixteen perches.

If the case rested here, there could be no question that the Court would dismiss the complainant's bill.

Such a statement in a deed, unaccompanied by the words "more or less," is not "mere description of the property," it is a positive affirmative representation of the quantity of land sold, and "a ratable abatement" of the price stated in the deed, would be made for the twenty-nine acres and twenty-four perches, which, at the average price of $53.47 per acre, would make a sum much greater than the $1000 mentioned in the mortgage. *Marbury vs. Stonestreet,* 1 *Md.,* 147; *Kent vs. Carcaud,* 17 *Md.,* 291.

In such a case it is not necessary that the representation should have been fraudulently made. If *made,* "though innocently," and believed by the purchaser, there must be a deduction, and if a mortgage has been given, it is void. *Marbury vs. Stonestreet, (above cited;) Joice vs. Taylor,* 6 *Gill & Johns.,* 54; 1 *Story's Equity,* sec. 193.

Now, what is there in the oral testimony in this case which relieves the complainant from the operation of this well settled principle of law?

The defendant, Steckel, states in his testimony, that Stroud (who conducted the negotiation, and whose act was afterwards ratified by the complainant by giving the deed) represented the farm to contain one hundred and ninety acres, and indeed more. There was an "express understanding that it was to contain one hundred and ninety acres." That he, the defendant, in purchasing the farm and agreeing to the price, ten thousand dollars, "solely

depended on Stroud's representation as to the number of acres in said farm." That the statement was "believed" by defendant, is clearly shown, from the fact that he afterwards sold the land in parcels, as containing one hundred and eighty-seven acres, and when he ascertained it was short, immediately told the purchaser of the residue that he would not charge him for land he did not get. It is utterly impossible to escape the conviction that Steckel relied upon and believed the statement made by Stroud orally, and by the complainant in her deed. He at once notified complainant of the deficiency, expecting that she would be as honest with him as he had been with Dieter, who purchased from him.

But it is said that this was an exchange of properties. Admit for the sake of argument that this is so. Does this alter the fact that defendant took the property at the price of ten thousand dollars, relying on the statement made to him that the farm contained one hundred and eighty-seven acres?

After the first oral agreement or conversation, in which Stroud stated to defendant that the farm "Choice," contained one hundred and ninety acres or more, and which agreement or statement were put into the written agreement, coupled with the word "about," the defendant says that Stroud came to him and stated, that upon examination of his papers, he had ascertained that the farm only contained one hundred and eighty-seven acres; defendant did not object to this small deduction, but said, "he did not want it to be any less," and in accordance with this the deed was made for one hundred and eighty-seven acres. The word "about" might well cover the deficiency of three acres, but when the quantity has been definitely ascertained, it was communicated to defendant and so put into the deed.

This statement is not in the slightest degree contradicted by the testimony of Stroud, but on the contrary is fully

corroborated thereby. Steckel says Stroud told him that after he had examined the papers he found the farm contained only one hundred and eighty-seven acres. Stroud says in his ninth answer, that he "made him acquainted with the contents of the deed," *not* that he read the deed to him. It is certain that Steckel never saw the deed; when he and Stroud went to the conveyancer, Aldrich, the deed was not with them, for the quantity was stated in the agreement which they then instructed Aldrich to draw, as "about one hundred and ninety acres," and Aldrich says in his third answer, that the deed was "furnished him by Stroud." Steckel's statement is undoubtedly the true one; that at the first, Stroud said the farm contained one hundred and ninety acres or more, and after he had consulted his deed, he said it contained but one hundred and eighty-seven acres. Stroud's testimony, that he had never had the farm surveyed, and derived his information only from the deed may all be true, but if it were an honest mistake, still Steckel relied on it, and that is all the law requires.

But it is said the scrivener, Aldrich, also made a mistake in not adding the words "more or less." But what right had he to put these words in? Steckel had been told that the land contained one hundred and eighty-seven acres, what right had the complainant, or her agent, Stroud, to alter the agreement by inserting words which altered the agreement between the parties? Steckel had become the purchaser, relying entirely on the statement that the tract contained one hundred and eighty-seven acres. Whatever Stroud or the complainant intended to do, is not to the point; if they intended, by inserting the words "more or less," to discharge themselves from their agreement, they were intending to perpetrate a fraud. But this is all foreign to the case in hand. They did not put the words "more or less" in the deeds, and having pretended to convey us one hundred and eighty-seven acres, which

turned out to be only one hundred and fifty-seven acres and sixteen perches, they now seek to recover the price, and we, as we have the right to do under the law, say there is no consideration for the mortgage.

It is said, that because Steckel sold to Dieter, and inserted the words "more or less," he can recover the whole purchase money from Dieter, and thus avoid loss. In other words, equity will compel Steckel to perpetrate a fraud on Dieter to save the complainant from the consequences of her contract. Both Steckel and Dieter say, that notwithstanding the words "more or less," it was expressly agreed that the farm contained one hundred and four acres; that this statement furnished the sole consideration for the purchase; that it was in fact the essence of the contract. To say that the words "more or less" will sustain a sale where there is a deficiency of nearly thirty acres in a tract sold as containing one hundred and four acres, a deficiency of nearly one-third, when both purchaser and vendor agree that quantity was the essence of the contract, notwithstanding the words "more or less," is giving to those words more effect than has ever been given to them in any Court.

But complainant forgets that Dieter is a party to *this* suit. That his property is to be sold by the decree in *this* case, and that he has filed his answer, claiming, as he has a right to claim, that the consideration of this mortgage has failed. As assignees of the equity of redemption, by deeds from Steckel, Dieter, the McVeys and Hall, all have the right to object, and do object to the passage of a decree for sale. *Andrews vs. Poe,* 30 *Md.,* 485; 1 *Hilliard on Mortgages, p.* 563, *sec.* 3, *p.* 564, *sec.* 7.

BRENT, J., delivered the opinion of the Court.

The object of the bill in this case is to foreclose a mortgage for one thousand dollars, the balance of the purchase money for the farm, named in the mortgage, which had

been sold to Steckel, one of the appellees, and for which a deed had been executed to him.

The answer of Steckel sets up, as matter of defence, that there is a deficiency in the number of acres, called for in the deed, to a larger amount in value than the sum for which the mortgage was given; that the mortgage is therefore without consideration, and ought not to be enforced.

To this answer the mortgagee, Mrs. Mendenhall, filed a replication, alleging that by a mistake of the conveyancer in preparing the deed, the words *more or less* were omitted, and not inserted as they should have been, after the number of acres therein given, and that the deed thus fails to express the true agreement of the parties. Upon this replication issue was joined.

The following agreement was then entered into between the parties, and filed in the case. "It is agreed in this case for the complainant and for all the defendants, that no objection shall be taken to any defects of pleading, and that either party shall have the right to offer in evidence, subject to exceptions for all other causes, any evidence which would be material and proper to support the allegations of either party *under any state of pleading.*" This agreement disposes of the necessity of determining whether the technical objections, presented in the brief for the appellant, are well taken, and very clearly submits for decision in the case, first, whether from the face of the deed and the proof of the actual number of acres contained in the farm sold, the mortgagor is entitled to an abatement for a deficiency; and secondly, whether there is proof to establish a mistake in the deed as is alleged by the appellant in her replication.

The deed specifies the number of acres to be one hundred and eighty-seven. The survey of Mr. McCauley, the correctness of which is not disputed, shows that the tract in reality contains but one hundred and fifty-seven

acres and sixteen perches,—a deficiency of nearly thirty acres. Upon this proof the vendee, Steckel, is clearly entitled to an abatement of the purchase money for the deficiency. The case is within the decision in *Marbury vs. Stonestreet*, 1 *Md.*, 152. It is there said, " where land is sold in gross, for a sum certain, upon a statement of the number of acres, quantity must be regarded as a material consideration with the vendee." In that case, as in this, a specified number of acres was mentioned without any qualification, " such as *more or less, by estimation,* &c., to intimate that a positive declaration as to quantity was not intended," and the vendee was allowed for the deficiency.

The appellant, seeing this difficulty, asks that the deed executed by her, may be reformed, by adding after the number of acres the qualifying expression "more or less," upon the ground that these words were omitted through the mistake of the scrivener, and the deed, as it now stands, does not express the true agreement of the parties.

Mistake is well recognized as a sufficient ground upon which to decree the reform of a deed, but the Courts exercise their power in this respect with great caution, and only upon very clear and satisfactory proof. That proof we cannot say has been furnished in this case. The agreement for the sale or exchange of this property was made by Stroud and Steckel, the former acting for his sister, the appellant. They have both been examined as witnesses, and while Stroud is positive that the agreement was " that the parties should swop property for property, without reference to the number of acres contained in each," Steckel is equally positive that when the deed came to be drawn up the exact number of acres was fixed upon. The testimony of the conveyancer gives but little or no aid in settling this difference in the recollection of these two witnesses. He nowhere says that he was directed to qualify the number of acres mentioned in the

deed by adding the words *more or less.* He only states, as Stroud had done in his testimony, that the deed from Stroud and wife to Mrs. Mendenhall had been furnished him, from which to copy a description of the property. That deed is exhibited in the proof and it does contain, after the number of acres mentioned in it, the words *more or less.* But it is clear that the conveyancer was only to take from it the description by metes and bounds, and not the number of acres, for this deed conveys "two hundred and thirteen acres, and one hundred and eight square perches of land more or less." The present deed purports to convey one hundred and eighty-seven acres only. So that the conveyancer must have been furnished with a statement of the number of acres sold to Steckel, and could not have been directed to copy them as found in the deed furnished him with the annexed qualification of "more or less." Before the execution of the deed to Steckel, a written agreement of sale was entered into between the parties, and this furnishes strong corroborating proof of the testimony of Steckel. In that agreement the property is described as "containing *about* one hundred and ninety acres." Certainly some different understanding was afterwards reached, or this description would have been followed in the deed. If the property was sold in gross there could have been no reason for changing it. Yet it was changed and the number of acres mentioned in the deed is put down at one hundred and eighty-seven, without any qualifying expression whatever.

We not only think that the appellant has failed to establish by clear and satisfactory proof any mistake in the deed, but we think the decided weight of the proof is, that it truly sets out the understanding of the parties at the time it was executed. We may add, that the fact that this deed is drawn up by a regular conveyancer, mutually selected by the parties, has not been without its influence in bringing us to this conclusion.

As a ratable abatement for the deficiency proved will fully cover the amount of the mortgage, the decree of the Court below dismissing the bill of complaint will be affirmed.

*Decree affirmed.*

(Decided February 15th, 1878.)