GEORGE D. NEAVITT *v.* ELIZABETH B. LIGHTNER
ET AL., ADMINISTRATORS, ET AL.

[No. 19, April Term, 1928.]

*Decided May 24th, 1928.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*W. Calvin Chesnut* and *S. Ralph Warnken,* with whom was *Herbert E. Perkins* on the brief, for the appellant.

*W. Mason Shehan* and *G. Elbert Marshall,* with whom were *Madison Brown* and *Shehan & Marshall* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

On the 24th day of May, 1920, Sarah J. Barton, widow, entered into an agreement in writing with George Davis Neavitt, the appellant, for the sale to him for $17,000 of "all that farm or tract of land called or known 'Partnership' or 'The Sarah J. Barton Farm,' situate, lying and being in the sixth election district of Queen Anne's County aforesaid, on the right of the public road leading from Centerville to Hillsboro, now in the tenancy of Edgar Blades, and containing 220 acres of land, more or less." The agreement contained various provisions, which need not be stated, but among them was no stipulation for a covenant of special warranty nor of further assurance. The vendee was given the rights of owner, subject to the tenancy, which expired on December 31st, 1920, when the vendor was to give full possession and a deed for the property. In accordance with the terms of sale, the vendor, on December 31st, 1920, executed and delivered to the vendee a deed conveying the proprty by these words:

"The said Sarah J. Barton does hereby grant and convey unto George D. Neavitt, his heirs and assigns, in fee simple, all that farm or tract of land, situate, lying and being in the sixth election district of Queen Anne's County aforesaid, known as 'The Sarah J. Barton Farm' or 'Partnership,' or by whatsoever other name it might be called, on the public road leading from Centerville to Queen Anne, adjoining the lands of Fred Sylvester, formerly owned by William Pennington, the lands of William J. Barton, formerly owned by J. Hall Barton, and the lands formerly owned by the Colgan heirs, containing two hundred and twenty acres of land, more or less, being the same tract of land which was conveyed unto the said Sarah J. Barton by Francis T. Barton by deed dated the 17th day of March, in the year eighteen hundred and ninety-six and recorded among the Land Records of Queen Anne's County in Liber W. H. C. No. 4, folio 285, etc., to which said deed and the references therein con-

tained reference is hereby made for a more full and perfect description of the property hereby conveyed. * * *

"And the said Sarah J. Barton covenants that she will warrant specially the property hereby conveyed and will give such further and other assurances of title as may be requisite or necessary."

Simultaneously with the delivery of the deed, the vendee, for the purpose of securing to the vendor the payment of the sum of $13,000, the residue of the purchase money, at the expiration of five years from January 1st, 1921, with interest, conveyed unto the vendor by a purchase money mortgage the same parcel of land as containing 220 acres of land, more or less. The description in the mortgage deed referred to the names by which the tract was known, to the adjoining property owners, and to the deed to the mortgagee and the one from her to the mortgagor. This mortgage deed was assigned by the mortgagee on August 21st, 1924, to Sallie B. Jump and Madison Brown, guardians of Elizabeth B. Jump, Francis Jump, and Harold Jump, infants, as collateral security for a loan to the mortgagee.

The mortgagee died intestate in 1925, and on the maturity of the mortgage indebtedness its payment was demanded, whereupon the mortgagor refused to pay, disclosing for the first time his contention that the property had been sold to him through misrepresentation, fraud, and concealment as to the number of acres it contained. The mortgagor asserted that the farm was represented to him as having two hundred and twenty acres, more or less, that he had recently learned of the deficiency, and that he would pay the mortgage debt and interest when a proper abatement had been allowed on account of the acreage he did not obtain under his deed. A subsequent survey of the property for the mortgagor established that the correct area of the tract conveyed was one hundred and seventy-nine and one-half acres. This was attributable to the fact that the vendor and her then husband, Francis T. Barton, had conveyed by deed, duly recorded, to James A. Mullikin on August 26th, 1906, for three hundred

dollars, thirty-two acres and seventy-four square perches off of the original tract of two hundred and thirteen acres, more or less, granted to Sarah J. Barton by deed of Francis T. Barton, dated March 8th, 1896, and duly recorded in Queen Anne's County in Liber W. H. C. No. 4, folio 285, etc. The holders of the mortgage lien refused to make any reduction in the debt because of the deficiency in acreage, and began foreclosure proceedings, which were checked by a bill in equity begun by the mortgagor as complainant against the personal representatives of the dead mortgagee, the guardians of the infants holding the mortgage as collateral security, the infants individually, the attorney named in the mortgage to foreclose, and the solicitors for the attorney foreclosing. The bill prayed for an injunction to stop the foreclosure of the mortgage, and that a suitable abatement of the purchase price be made. The injunction was issued on the filing of a bond, with leave to the defendants and appellees to move for its rescission in the usual form. The appellees answered denying the material allegations in the bill of complaint, and then the parties offered proof in open court, which dissolved the injunction and dismissed the bill of complaint. The appeal is from this decree.

The record, therefore, presents for review a contract for the sale of land that had been fully executed by the vendor and vendee more than five years before any relief was sought for an alleged misrepresentation by the vendor in the quantity of land sold. The vendor died before the suit of the vendee was begun, and his explanation of the cause of the delay was that he did not discover the averred discrepancy until the year he began his action, because it was not until then that his cultivation of the arable fields had disclosed through the record of the drill the loss in acreage. In view of the fact that the farm had five tillable fields, and that four of these had been sown in wheat in 1921 and 1922, and that other circumstances would likely have attracted his attention to the difference, the explanation is not very satisfactory, and does not relieve the court of its disinclination to disturb a wholly executed contract, after the death of one

of the parties. A court of chancery will not grant relief under these conditions, unless the right to it is supported by clear and decisive proof. The errors assigned for reversal will now be considered.

I. A salesman for the appellant called on Mrs. Barton at her farm to sell fertilizer and she asked him if appellant, who was then also in the real estate business, would sell the property for her as agent. The salesman asked appellant if he would, and was told by the appellant to get the number of acres in the farm from Mrs. Barton. When the salesman again saw the owner he inquired and was given the number of acres, which he set down in a book. The salesman could not recall the acreage, but testified he gave the information to the appellant from the memorandum. When the salesman carried to the appellant the inquiry if the latter would undertake the sale of the farm, he was for that purpose the agent of the vendor, and, therefore, when he delivered the message, his agency for the vendor ended, and when he returned to her to find out the acreage of the tract, he was in the employ of and acting solely for the appellant as his principal. Whatever the vendor said to the agent for the information of the appellant was, in effect, a statement made to the principal; and the evidence of what this statement was, and that it was communicated by the agent to appellant, was admissible from the lips of the agent. But the report made, pursuant to the scope of his agency, by the agent to his principal, out of the presence of the vendor, cannot be testified to by the principal, as his evidence would be merely that his agent had told him what a third party had said and done. Since the appellant had no personal knowledge of the vendor's actions and of what she had stated to his agent, the offer to prove by the appellant that the agent had told him that Mrs. Barton had asserted to the agent that the farm contained two hundred and twenty acres was not admissible. If there had been any error in excluding this offer, the appellant's own testimony is in the record that the vendor had told him the farm contained two hundred and twenty acres. The excluded testimony was, therefore, before the court for its

consideration in a more persuasive form than that introduced in the offer; and, under the circumstances, the rejection of the testimony offered was not reversible error.

2. The testimony on the record is conflicting, but the conclusion that the appellant did not buy by the acre, but in gross, is inevitable from the oral and written evidence. In the two letters of the appellant to Mrs. Barton, which were written before the attorney for her prepared the contract of sale, but which contained its material terms, the quantity of land is not mentioned, and the property is described as "your farm known as 'Partnership' about one mile from Queen Anne, Md., on the left of road leading toward Centerville." And at the time appellant agreed to buy the farm for seventeen thousand dollars, he had sold it to William Hignut for twenty-two thousand dollars, and later the appellant put his vendee in possession of the premises. Although the vendee was entitled to what he had bought, for all practical purposes this resale made it immaterial to the appellant that some fourteen years earlier a parcel of land had been sold off to Mullikin for three hundred dollars. If Hignut had not become financially unable to complete his purchase, appellant would have had a handsome profit out of his speculation. And Hignut testified positively that, before the sale to the appellant, they had visited the farm together, and that the appellant had told him that the farm contained but one hundred and seventy acres. The appellant denied this conversation, but the circumstances lend probability to Hignut's version. He is a disinterested witness, whose credibility is not impeached except by the appellant's contradiction, while the appellant's testimony stands alone, and is sharply challenged in material matters by other witnesses. The position of the appellant is further impaired by his unexplained conduct in buying of his principal the subject matter of his agency at a price five thousand dollars less than the amount for which he had sold the property to a third party. Such a course impairs confidence in his testimony.

The appellant was a dealer in real estate and knew this property when he began the negotiations for its purchase.

The farm had remained unchanged for over fourteen years, and its boundaries were fixed and its location with respect to adjoining land owners ascertained. Both vendor and vendee were dealing with respect to a certain farm, without reference to its precise area; and the price agreed for its purchase was independent of the actual acreage. The testimony wholly failed to establish appellant's charge that the sale was procured by "misrepresentation, fraud and concealment as to the number of acres in said farm." Moreover, the court is convinced that the parcel of land sold off to Mullikin fourteen years before the transaction under review was known by both parties to be outside of the boundaries of the farm actually bought and conveyed, and that, under the circumstances disclosed, the variation in acreage from the two hundred and twenty acres, more or less, named in the deed, is immaterial and was expected. Without any further review of the facts, it is sufficient to say that we find ourselves in agreement with the conclusion of the able and experienced judges who sat below, that the appellant got under his deed all that he bargained for and bought. *Hall v. Mayhew,* 15 Md. 551, 568; *Slothower v. Gordon,* 23 Md. 1, 10; *Tyson v. Hardesty,* 29 Md. 305; *Jones v. Plater,* 2 Gill, 125; *Stull v. Hurtt,* 9 Gill, 446, 3 Md. Ch. 26; *Baltimore v. Smith,* 54 Md. 203; *Cohen v. Numsen,* 104 Md. 676; *Jenkins v. Bolgiano,* 53 Md. 407, 418, 420, 421; *White v. Northup,* 150 Md. 18, 21; *Musselman v. Moxley,* 152 Md. 13, 16, 17.

3. The proof on this record having failed to establish that Mrs. Barton had been guilty of fraud in connection with any representation of the quantity of land sold to the appellant, or that he had been misled or deceived by the acreage named in the deed, the remaining question is whether the covenants of special warranty and of further assurance of title gave the appellant any right to an abatement in the purchase price. Passing the propriety of granting relief in equity or upon the allegations of the bill of complaint, the point chiefly relied upon by the appellant on brief and in oral agreement is that, however innocently or mistakenly done, the vendor had breached the covenants by the manner

in which the deed prepared for her by the vendee's attorney had described the quantity of land conveyed. This theory of the case selects from the whole description of the property the following concluding portion: "being the same tract of land which was conveyed unto the said Sarah J. Barton by Francis T. Barton by deed dated the seventh day of March, eighteen hundred and ninety-six, and recorded among the Land Records for Queen Anne's County in Liber W. H. C. No. 4, folio 285, etc., to which deed and the references therein contained reference is hereby made for a more full and perfect description of the property hereby conveyed," and argues that the grantor thereby covenanted that she was conveying two hundred and thirteen acres, since the Francis T. Barton deed to her called for "two hundred and thirteen acres of land, more or less," and that, since she had in 1906 conveyed therefrom to Mullikin a parcel of thirty-two acres and seventy-four perches, her deed to the appellant, passing title only to the residue of the original tract, was a breach of the covenants. To reach such a conclusion it is necessary to reject the evidence; to confine the case to the deed, and to accept what is descriptive of the tract as a covenant to convey a specific quantity of land; and, further, to ignore the preceding grant of the land, with its other more immediate terms of description. The fee simple conveyed is in "all that farm or tract of land, situate lying and being in the sixth election district of Queen Anne's County aforesaid, known as "The Sarah J. Barton Farm" or "Partnership." It will not be doubted that all that composed the farm or tract of land so known, no matter its acreage, is what was intended to be conveyed, and was conveyed. The terms employed put the purchaser on inquiry as to what then comprised "The Sarah J. Barton Farm" or "Partnership," and on information that nothing except what then was so embraced would pass to him. *Devlin on Real Estate* (3rd Ed.), secs. 1012, 1014, 1029; *Huddleston v. Reynolds,* 8 Gill, 332; *Wall v. Forbes,* 1 H. & G. 441; 2 *Tiffany on Real Property* (2nd Ed.), sec. 441, p. 1646, sec. 447, pp. 1670, 1671. The subsequent words showing its location on a public road and the adjacent land owners, as

well as the phrase "containing two hundred and twenty acres of land, more or less," are quite as much a part of the general description of the land granted as the concluding portion relied upon by the appellant, and all put the grantee on notice that the quantity of land conveyed was by estimation.

The general form in which the description of the land was cast tends to exclude the inference that the vendor and vendee contemplated an express covenant of the quantity of land to be conveyed. Much stress was laid upon the reference to the Francis T. Barton deed, and its references, "for a more full and perfect description of the property hereby conveyed," but this very deed stated the quantity with the qualifying words "more or less" and did not give any description by courses and distances; and no deed was produced containing a better description than the one to the appellant. Further, the testimony tended to establish that no survey existed until one was made for the appellant according to the lines as pointed out to the surveyor by the appellant and a neighbor. Furthermore, the record furnished evidence that the description of the deed to the appellant gave its boundaries more accurately than the one to which reference was made. For instance, appellant's deed identified the tract conveyed with the quantity of land composing and known by the title of "The Sarah J. Barton Farm," which was a designation unknown at the time of the grant to her and so was subsequently acquired by reputation.

As early as *Wall v. Forbes,* 1 H. & G. 441 (1827), Chief Judge Buchanan said for this court: "There is no doubt that a tract of land may acquire by reputation a name different from that which it bears in the patent, and may pass by such acquired name." *Huddleston v. Reynolds,* 8 Gill, 332, 336; *Cadwalader v. Price,* 111 Md. 310, 315. Again, the deed to the appellant was made to conform more closely to the situation of the property at the time of its sale by describing the tract conveyed as adjoining the lands of the successors in title of those similarly named in the deed of 1896. It thus appears that the reference to the deed of 1896 "for a more full and perfect description" was a mere conveyancer's

inaccuracy, and was chiefly useful as giving the chain of title. By calling the tract by the name which it had acquired, and giving its boundaries by naming a roadway and adjacent lands, the property intended to be conveyed was identified, and a subsequent defective description or mistaken reference will not vitiate the correct description or defeat the conveyance as intended, but will be regarded as surplusage. *Creswell v. Lawson,* 7 G. & J. 227, 252. What the appellant had surveyed in 1926 was "The Sarah J. Barton Farm," and that was what the vendor sold and he bought, and was conveyed without any different representation of quantity according to the court's view of the proof. Consequently, there can be no breach of a covenant of warranty when the grantee has received a deed for precisely what he bought.

As has been frequently decided, in construing the provisions of a deed they must be considered as a whole, and very little stress is to be placed on words of recital and general description as to the extent of a conveyance where there is a particular description; and especially is this true with respect to a statement of the quantity of land conveyed, when by estimation or accompanied by the words "more or less." 2 *Devlin on Real Estate* (3rd Ed.), secs. 1044, 1046; 2 *Tiffany on Real Property* (2nd Ed.), pp. 1670, 1671; *Washburn on Real Property* (6th Ed.), sec. 2322; *Brown v. Reeder,* 108 Md. 653, 657; *Cochrane v. Harris,* 118 Md. 295, 302-304; *Weinbeck v. Dahms,* 134 Md. 464, 466; *Logsden v. Brailer Mining Co.,* 143 Md. 463, 474, 475.

Speaking with reference to the construction of a deed, it was said in *Md. State Fair v. Schmidt,* 147 Md. 613, 621, that "to ascertain its true meaning the situation of the parties and the circumstances attending the execution of the deed may be considered." When this is done in the instant case, there seems no doubt that the deed under construction did not contain an express or implied covenant that the quantity of land mentioned was the quantity conveyed. The rule is clearly stated in *Devlin on Real Estate* (3rd Ed.), sec. 1044. "In the description of land it is usual, after the

description by metes and bounds or subdivisions, to add a clause stating that the land described contained so many acres. But unless there is an express covenant that there is the quantity mentioned, the clause as to quantity is considered simply as a part of the description, and will be rejected if it is inconsistent with the actual area, when the same is capable of being ascertained by monuments and boundaries. The mention of the quantity of land conveyed may aid in defining the premises, but it cannot control the rest of the description. Neither party has a remedy against the other for the excess or the deficiency, unless the difference is so great as to afford a presumption of fraud." See secs. 1045, 1046.

As the facts and circumstances of this record do not establish any fraud on the part of the vendor, the presence of the words "more or less" in both the deed from the vendor to the vendee, and the deed therein referred to under which she acquired title, precludes the construction that the grant to the appellant warranted the quantity of land conveyed to be that named in either of these conveyances, since the parties must be taken to have assumed the risk of a gain or a loss in the quantity of land estimated as the use of the words "more or less" implies. Nor does the amount of the deficiency between the acreage of "The Sarah J. Barton Farm" and the estimated area in the deeds have here any significance, because the particular tract of land bought and sold by the parties and conveyed is shown by the proof to have been identical. As was said in *Musselman v. Moxley*, 152 Md. 13, 16: "In *Jones v. Plater*, 2 Gill, 128, the court adopts the language of Judge Story in *Stebbens v. Eddy*, 4 Mason, 419, where he says : 'It seems to be that there is much good sense in holding that the words "more or less," or other equivalent words in contracts or conveyances of this sort, should be construed to qualify the representation of quantity in such a manner that, if made in good faith, neither party will be entitled to relief on account of deficiency or surplus.' " See *supra*, and *Slothower v. Gordon*, 23 Md. 10; *Jenkins v. Bolgiano*, 53 Md. 407, 420; *Hall v. Mayhew*, 15

Md. 568; *Cohen v. Numsen,* 104 Md. 680, 681; *Mendenhall v. Steckel,* 47 Md. 453, 465, 466; *Zittle v. Weller,* 63 Md. 190, 198; *Second Universalist Society v. Dugan,* 65 Md. 460, 471, 472; *Hopper v. Smyser,* 90 Md. 363, 383; *Kitzman v. Carl,* 133 Iowa, 340, 12 Ann. Cas. 296, and note.

Finding no reason for a reversal, the decree appealed from will be affirmed.

*Decree affirmed, with costs.*