128 So.2d 158 (1961)
Frank H. COBLE, William Gegax, and Carl Coble, Appellants,
v.
Arthur S. AGNEW, Appellee.
No. 1969.
District Court of Appeal of Florida. Second District.
March 29, 1961.
Henderson, Franklin, Starnes & Holt, Fort Myers, for appellants.
Sheppard & Woolslair, Fort Myers, for appellee.
SMITH, CULVER, Associate Judge.
This action was brought by appellants-plaintiffs against the appellee-defendant, seeking an abatement of the purchase price of a certain tract of land purchased from him. Plaintiffs alleged that they did not know the amount of acreage contained in the tract and that they relied on the defendant's representations in that respect. It is further alleged that about two years after the transaction was closed, plaintiffs caused the tract to be surveyed, which survey revealed an acreage deficiency of 7 1/2 acres. The purchase price was $33,000, and plaintiffs contended that they were entitled to an abatement in the price of $1,000 per acre, it being their position that the tract *159 was represented to them as containing 33 acres, more or less.
There is a considerable conflict in the testimony produced before the Chancellor. He found that the equities were with the defendant, and dismissed plaintiffs' complaint. The Chancellor made no findings of fact in his decree.
On appeal, under these circumstances, this Court must accept the facts to be those shown by that evidence most favorable to the party prevailing below. Since no finding of fact was made, we, of course, assume that the Chancellor relied upon that evidence supporting the position of the defendant. This controlling principle is set out in the case of Pergament v. Pergament, Fla.App., 117 So.2d 26, 29 wherein this Court said:
"We stated above that the testimony was heard personally by the trial judge. An appellate court does not retry a case but accepts a determination of facts made by the trial judge where the record discloses testimony from which the trial judge could have determined the facts, which was done in this case. The truth or falsity of the testimony of various witnesses, the effect thereof, and the weight to be given the testimony of each witness are matters for the trier of facts to determine and not an appellate court."
We, therefore, set out herein as a statement of facts, that evidence favoring the defendant, conceding that much is contradicted by other evidence appearing in the record.
The tract of land in question, being located in Lee County, Florida, had been owned by defendant for approximately 37 years. On October 22, 1956, defendant wrote Ragsdale and Guthrie, real estate brokers, offering them a listing on the property involved for $36,000. The letter contained a sketch, prepared by the defendant, estimating there to be about 35 acres. Defendant denied ever making any representation to the brokers or to plaintiffs, before the transaction was closed, other than the letter mentioned above, as to the number of acres contained in the tract of land he was selling. There is testimony to the effect that one of the plaintiffs verbally agreed to purchase the property for $36,000, but that he was unable to carry through on that basis. He later brought another of the plaintiffs into the deal and they made a counter-offer of $33,000 which the defendant accepted. Two of the plaintiffs came to Fort Myers before the transaction was closed and discussed the property with the defendant, who denies making any statements whatsoever concerning the number of acres it contained. He testified that he did not know.
The first contract drawn described the property by metes and bounds, without any reference to the number of acres. Plaintiffs requested that there be added to the contract a provision that the purchase price was based upon an estimate of 33 acres and would be subject to revision upward or downward, at the rate of $1,000 an acre when a survey was completed. They further requested that the parties provide who should bear the cost of a survey. The defendant refused to agree to these provisions. His reasons were that he was selling a piece of ground according to a metes and bounds description, and that he did not know himself how many acres there were. Thereafter, a provision was added stating that the tract contained "33 acres more or less." The contract containing the quoted words after the metes and bounds description was executed by the parties on May 21, 1957. The deed of conveyance contains the same metes and bounds description and the words "33 acres more or less."
Plaintiffs' surveyor testified that he could accurately locate the property from the metes and bounds description, but upon making his survey two years later found only 25.5 acres. A survey by another qualified party showed 27.5 acres in the tract.
*160 We believe that the real point to be resolved in this controversy is whether the transaction in question was a sale by the acre, or a sale in gross.
The plaintiffs' principal reliance for reversal is upon two cases. The first is that of Phifer v. Steenburg, 66 Fla. 555, 64 So. 265, 268. In that case the lands were described by metes and bounds and further stated to contain 3,500 acres more or less. Seller's agent assured the purchaser that he well knew the lands and that they contained 3,500 or more acres and that he would make a good title to that many acres. It further was made to appear that the purchaser, not knowing, relied solely on the assurance of seller's agent and entered into the purchase of the lands. After the contract was executed, the purchasers caused the lands to be surveyed and found, from the survey, that there was a shortage of 530 acres. The Court, in its opinion said:
"In the instant case the contract of sale describes the lands by the government designation, and states that the quantity of land contracted to be sold was 3,500 acres, more or less. The words `more or less' thus used are generally limited to a reasonable deficiency because of small errors in surveys and to variations in instruments, and should not be applied to relieve against a gross deficiency in the quantity of land, when, as alleged in the bill, the vendors' agent assured the purchaser that he well knew the lands, that they contained in the aggregate 3,500 acres, and that the vendors would make a good title to that many acres, accompanied with the further allegation that the vendee did not know the number of acres, and had no notice of any deficiency, and relied entirely upon the assurance of vendors' agent." (Emphasis supplied.)
The Court then held that, under the circumstances, the purchaser was entitled to an abatement of the purchase price. In applying the holding in the Phifer case to the one now before us, we must keep in mind the phrase "under the circumstances." Here, no assurance was given of the number of acres involved, or that a good title would be made to a certain number. The defendant refused to sign a contract providing for a revision of the purchase price upward or downward at a certain rate per acre when a survey was made. Thus, defendant not only made no assurance as to the number of acres in the tract, but pointedly refused to agree to any adjustment in the purchase price according to the number of acres to be shown by a survey. This seems, in effect, to be a direct position taken that he would not be responsible for the exact number of acres contained in the land described by metes and bounds. We might say, at this point, that plaintiffs do not attack the accuracy of the metes and bounds description, and further, their own witness testified that he could accurately locate the property from the description given.
The second case relied upon by plaintiffs is Firstbrook v. Busbee et al., 101 Fla. 876, 132 So. 673, in which the lower Court's holding, in favor of the seller, was reversed. The Supreme Court, in its opinion, commented that the description of the land was not sufficiently definite to enable the purchaser to ascertain the area of the tract; that the seller assured the purchaser that he would have a survey made, showing that the tract contained five acres, such assurance being reduced to writing and being attached to the deed. This survey was not made.
In comparing the Firstbrook case with the instant one, we find sharp differenences. Here we have a description which enabled the property to be accurately located, as contrasted to a situation where the description would not permit the purchaser to ascertain its area. Here the seller did not, in writing, guarantee to the purchasers that he would provide a survey showing a certain, definite number of acres. On the contrary, he refused to do so. In *161 considering both the Phifer and Firstbrook cases, the terms "falsely represented," or "fraud" are used. The evidence now before us, as set forth herein, makes no showing of fraud. The Phifer and Firstbrook cases lay great stress on the particular circumstances of each. Following the same course, we believe the circumstances of the controversy now before us distinguish them, as has been pointed out. In our opinion, under the circumstances shown by competent testimony in the record, this was a sale in gross, and not by the acre. A lengthy annotation on this entire question of whether a sale is in gross or by the acre appears in 1 A.L.R.2d, page 1. The general discussion, appearing on page 26, Section 11 is as follows:
"Before taking up individually the various factors influencing the determination of whether a particular contract of sale is a sale in gross or by the tract, certain generalizations may be mentioned which have found their way into many cases and which, while not particularly enlightening on the question, make it at least abundantly clear that the proper solution depends on a judicious weighing of varying, frequently opposing, circumstances which may serve as an indication of whether or not it was the intention of the parties to make quantity the essence of the contract.
"While the intention of the parties has been declared to be the ultimate basis for deciding whether a sale is one in gross or by the acre, the question whether the parties intended the sale to be one in gross or by the acre is not decided simply by whether the payment is made in a gross sum or at so much per acre or on the mere fact or mode of specifying the quantity of the land, but all the peculiar circumstances of each case, including the conduct of the parties, the date of the contract, the price, and the value, extent, and locality of the land, together with the language of the contract, must be taken into consideration. Because the ascertainment of the parties' intentions depends so largely upon the peculiar circumstances of each case, no great uniformity among the cases exists and no inflexible rule can be deduced therefrom."
It should be noted that the determination of the question ultimately depends upon the weighing of varying and often opposing circumstances, and upon the peculiar circumstances of each case.
The rule as to a sale in gross is well settled, and is set out in Phifer v. Steenburg and Firstbrook v. Busbee, supra. A purchaser in gross assumes the risk of a deficiency in quantity.
In accordance with our opinion expressed above, we find no reversible error and the decree of the Chancellor is hereby affirmed.
KANNER, Acting C.J., and SHANNON, J., concur.