## WITMER *v.* BLOOM ET AL.

[No. 252, September Term, 1971.]

*Decided March 21, 1972.*

174

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Douglas R. Taylor,* with whom was *Bernard F. Saul, Jr.,* on the brief, for appellant.

*John L. Clark,* with whom was *Bernard F. Murphy* on the brief, for appellees.

FINAN, J., delivered the opinion of the Court.

This appeal requires us to again construe the legal effect of the phrase "more or less" in relation to its use in the description of the quantity of acreage in a contract for the sale of land.

A helpful case note is found in 24 Maryland Law Review 210 (1964), titled, *Qualifying Terms and Relief For Deficiency in Land Sales,* wherein the author, capsulizing the state of the law on this matter in his final paragraph, concludes:

> "With the decision in *Carozza v. Peacock Land Corp.,* the Maryland Court of Appeals has now construed the qualifying terms most often used to modify statements of quantity in land sale contracts. 'About,' as construed in *Baltimore Permanent Bldg. & Land Soc'y v. Smith,* and 'approximately,' as construed in the instant case, are merely factors in determining the intent of the parties by normal principles of contract construction. A similar construction was placed on 'more or less' in the *Kriel* case, although this interpretation was weakened by

the language in the *Brodsky* case. Since 'about,' 'more or less' and 'approximately' are generally considered equivalent, the Court of Appeals, by distinguishing 'more or less' and 'approximately,' perhaps has missed an opportunity to reiterate the *Kriel* case and clear away the complicating vestiges of *Jones v. Plater* and *Hurt v. Stull.*"

We shall again revisit *Kriel* [1] and the cases cited in the case note.

The appellees, John H. Bloom, James O. Bloom, Louise V. Duff and Frances I. Peters, sought and obtained from the Circuit Court for Howard County (Mayfield, J.) a decree for the specific performance of a real estate contract of sale by the appellant, Dr. Fred E. Witmer. The contract of sale dated April 5, 1970, described the property to be conveyed by the appellees to the appellant as:

"* * * situate and lying in Howard County, known as the John H. Bloom property, at the eastern end of Maxine St., * * *, consisting of 26.6 acres more or less, improved with a frame house, barn and sheds."

The primary issue for consideration on appeal is whether this contract is for the sale of land in gross (sometimes referred to as a contract of hazard) or a sale by the acre.

The testimony taken in the court below reveals that the appellant requested Mr. Peter Congedo (Congedo), a real estate salesman in the employ of the Columbia Real Estate Company, to search for property which he might be interested in purchasing. In March, 1970, Congedo telephoned Dr. Witmer and informed him that the Bloom property was for sale. After Dr. Witmer inspected the property and expressed interest in its possible purchase, Congedo contacted the real estate broker with whom it was listed, one Eric Lassotovitch (Lassotovitch) and presented him a contract of sale which was prepared in

---

1. Kriel v. Cullison, 165 Md. 402, 169 A. 203 (1933).

the office of the Columbia Real Estate Company. The contract noted that the property contained 26.6 acres more or less, however, an attachment to the contract, consisting of a portion of the Howard County Tax Plats, depicted the Bloom property as containing 26.16 acres. John C. Davis, a real estate broker who assisted Congedo in drafting the contract, testified that the 26.6 figure was in error and that the figure intended to be used was 26.16 acres. It is also significant to note that the contract provided that, "[t]his contract is subject to survey of said property, to be made by the buyer within 30 days from acceptance of this contract."

Lassotovitch communicated the appellant's offer to the appellees; however, when they received the contract for signature, they responded by increasing the price of the land from $70,000.00 to $72,500.00 and by reserving for themselves a right of way through the property. These modifications were made on the contract submitted by Dr. Witmer and were initialed by the appellees. Dr. Witmer accepted the counter-offer on the day it was to expire, April 13, 1970.

Around April 26, 1970, Dr. Witmer's father, a civil engineer, began a search of the land records of Howard County with reference to the Bloom property and found a deficiency in the acreage as stated in the contract. Upon being informed of this fact, Dr. Witmer wrote a letter to Lassotovitch with copies to the appellees, notifying them of the deficiency. On May 18, 1970, after a meeting with the appellees concerning the shortage, Dr. Witmer employed the engineering firm of Purdum & Jeschke to prepare a field survey. The results of this survey showed that the property contained 23.264 acres, including in that amount .306 of an acre which was a part of Maxine Street, a public way. On July 24, 1970, Dr. Witmer, through counsel, notified the attorney for the appellees that he no longer wished to proceed with the purchase, and on September 15, 1970, the appellees filed a bill for specific performance of the contract.

The court below, although finding *Kriel v. Cullison*,

165 Md. 402, 169 A. 2d 203 (1933), to be controlling and quoting from *Kriel* to the effect that:

"* * * the words 'more or less', when used to qualify a representation of quantity in a contract to convey land, will be construed, whether found in an executed or an executory contract, as indicating an intention on the part of the parties to the contract to assume the risk of quantity, which, until rebutted by evidence of a different intent inherent in the instrument or extrinsic to it, will be recognized and enforced. * * *." 165 Md. at 411, 412.

found no evidence to refute the meaning of the words "more or less." Judge Mayfield accordingly held that the appellant had assumed the risk of the deficiency and entered the decree for specific performance from which Dr. Witmer appeals.

On appeal, Dr. Witmer has raised four points; however, we regard it necessary to discuss only one, namely, whether the chancellor erred in his determination that the intention of the contracting parties was to have entered into a sale in gross, as opposed to a sale by the acre. The appellant contends that the wording of the contract as well as the testimony elicited from him in the lower court affirmatively shows that the specific amount of acreage to be conveyed was a material element in his acceptance of the appellees' counter-offer. He particularly emphasizes that the contractural provision expressly stating that the contract was to be subject to survey is an indication of an intent to sell by the acre.

To provide some background into the nature of a sale in gross and the interpretation of the words "more or less" when describing acreage in a contract to convey land, we quote from *Kriel* which contains an exhaustive study of Maryland cases construing the latter phrase:

"A sale in gross, sometimes called a 'contract

of hazard', is where specific designated parcels of land are sold as a whole and there is no warranty, express or implied, as to quantity. 2 *Words and Phrases,* Third Series, page 446. In determining whether a sale is by the acre or in gross, as in other contracts, the intention of the parties is controlling and must be given effect. 27 R.C.L. 436; 39 *Cyc.* 1313, note 5.

"Where the language of the contract is clear, plain, and free from ambiguity, that intention must be gathered from its four corners; but where it leaves the question in doubt, extrinsic evidence as to the surrounding circumstances and the situation of the parties is admissible to aid in its interpretation. *Ibid.*

"The mere fact that the acreage is specified in the contract does not conclude the question, and where it is apparent that the specification of quantity was not intended by the parties to be of the essence of the contract, but merely descriptive of the property, the sale will be considered as in gross, notwithstanding the specification (39 *Cyc.* 1313, note), especially where the specification is qualified by the words 'more or less'. *Tyson v. Hardesty,* 29 Md. 305; *Slothower v. Gordon,* 23 Md. 9; *Hall v. Mayhew,* 15 Md. 551; *Stull v. Hurtt,* 9 Gill 446; *Hurtt v. Stull,* 3 Md. Ch. 24." 165 Md. at 408.

To the last mentioned list of cases cited in the above quotation we would add *Neavitt v. Lightner,* 155 Md. 365, 142 A. 109 (1928) and *Jenkins v. Bolgiano,* 53 Md. 407 (1880).

In *Brodsky v. Hull,* 196 Md. 509, 77 A. 2d 156 (1949), a case wherein an improved lot in Baltimore City was listed in the advertisement of sale as "about one acre" and the contract of sale stated "one acre more or less," when the lot actually was .465 of an acre, the Court did not address itself to the question of any evidence show-

ing an intention to rebut the use of the descriptive phrase "more or less," but rather centered its discussion on the issue of whether the description in the contract amounted to a fraudulent misrepresentation. The contract purchasers sued the sellers for breach of contract on the ground of fraud. Judge Delaplaine, speaking for the majority of the Court remarked:

> "It is a firmly established rule in this State that where it appears by definite boundaries or by words of qualification such as 'more or less', in a contract of sale that the statement of the quantity of land is mere estimation and description, and not of the essence of the contract the buyer takes the risk of quantity, and is not entitled to an abatement of price on account of a deficiency, in the absence of fraud. * * *."

This decision somewhat eroded *Kriel,* and prompted a strong dissent by Chief Judge Marbury. See also *Carozza v. Peacock Land Corp.,* 231 Md. 112, 116, 188 A. 2d 917 (1963), for the interpretation of the word "approximate" describing a quantity of real property; and *Baltimore Permanent Building & Loan Soc'y v. Smith,* 54 Md. 187 (1880) for the interpretation of the word "about." For a general discussion of this topic, see 1 A.L.R.2d 10 (1948) ; and 55 Am. Jur., *Vendor and Purchaser,* § 125 et seq.

Until the time of the *Kriel* decision, the term "more or less" was given a rigid interpretation, based on the ruling in *Jones v. Plater,* 2 Gill 125 (1844). In *Jones,* the Court adopted the reasoning of Judge Story in *Stebbins v. Eddy,* 4 Mason 414, 417, 22 Fed. Cas. 1192, 1195 (Cir. Ct. D. R. I. 1827) that:

> "* * * there is much good sense in holding, that the words 'more or less' or other equivalent words, used in contracts or conveyances of this sort, should be construed to qualify the representation of quantity in such a manner, that,

> if made in good faith, neither party should be entitled to any relief on account of a deficiency or surplus."

The chancellor below, while recognizing that the "formula"[2] for construing the term "more or less" laid down in *Jones*[3] under which the mere presence of the words were said to create a sale in gross, was diluted by *Kriel* (which held that the words indicated an intention that the parties assumed the risk of quantity and that the presumption could be rebutted by other evidence), failed to correctly apply the principle laid down by *Kriel.* See *Kriel, supra,* at 411, 412.

In *Carozza v. Peacock Land Corp., supra,* Judge Prescott (later Chief Judge) in summarizing the holding in *Kriel* stated:

> "* * * it is apparent that whether a sale is 'in gross' depends upon the facts and circumstances of each particular case." 231 Md. at 116.

In the instant case, where the property was not conveyed by definite boundaries, we deem the contractural provision for a survey, along with the testimony given in the court below and which we will later set forth, to be sufficient evidence to rebut the presumption attached to the use of the term "more or less."

The annotation found at 1 A.L.R.2d 10, 51, 52 states:

> "Though the use of the term 'more or less' is a strong indication that the number of acres is not of the essence of the contract, it does not automatically make the contract one in gross. There is authority to the effect that the phrase

---

2. The characterization given this rule of construction by Chief Judge Marbury in his dissent in Brodsky v. Hull, 196 Md. 509 at 517, who also noted that, "There is no magic in the words 'more or less.'"

3. See Kriel v. Cullison, 165 Md. 402, 408, 409; and Carozza v. Peacock Land Corp., 231 Md. 112, 117, for citations to cases adopting the ruling in Jones v. Plater, 2 Gill 125.

is not in conflict with the intention of the parties that the contract be one by the acre but the presumption can be rebutted only by clear and convincing evidence.* * *."

Citing among other authorities *Coughenour's Adm'rs v. Stauft,* 77 Pa. 191 (1874) ; *Clute v. Jones,* 28 N. Y. 280 (1863) ; and *Minge v. Smith,* 1 Ala. 415 (1840) the annotation in § 19 at 52 continues "the fact that the contract provides for a survey or that the parties subsequently agreed thereto tends to show a sale by the acre * * *."

In *Clute,* the appellee purchased the appellant's interest in her father's estate for the sum of $1,800.00. The method of payment was prescribed in the contract as:

"* * * as part payment [we] have conveyed to her a piece of land calling it twenty-four acres, at $60 per acre, which we agree to measure and estimate at that price, * * * to be measured within ten days; and we agree that we will give our promissory note for the balance, * * *."

The deed conveying the property to the appellant described the tract as "containing twenty-four acres be the same *more or less.*" After default on the note, the appellant commenced an action to recover the payments due her. The appellees defended on the basis that the property conveyed in partial payment actually contained 26.97 acres, not the 24 originally envisioned. The trial court held that the appellees were entitled to deduct the value of 2.97 acres from the amount claimed by the appellant. The New York Court of Appeals in affirming the lower court stated:

"The point that the defendants can not be allowed for more than twenty-four acres of land, because the land is described in their deed to the plaintiff by metes and bounds, and as 'containing twenty-four acres be the same more or less', is untenable; for the reason that the contract for the payment of the $1,800, for the plaintiff's interest in the property and estate

referred to, provides for ascertaining the number of acres of the land conveyed, and for an allowance therefor to the defendants, by the acres. * * *." 28 N. Y. at 284.

See also *Southern v. Sine*, 123 S. E. 436, 439 (W. Va. 1924) ; and *cf. Gottlieb v. Close*, 398 P. 2d 248 (Nev. 1965) ; *Williams v. Townsend*, 163 So. 2d 871 (La. 1964) ; *Coble v. Agnew*, 128 So. 2d 158, 160 (Fla. 1961).

The appellees argue that the provision for the survey in the instant situation is not indicative of an intent to enter into a sale by the acre, because the "survey was necessary in order to lay off the part of the land sold to be partially released from the [purchase money] mortgage as well as to determine the route of the right of way to serve the part of the land in the mortgage so it would not be landlocked." The fallacy in these contentions lies in the facts that: (1) the testimony given in the court below reveals that the partial release was but one reason for the survey provision, another being to determine acreage, and (2) that the reservation of the right of way was added to the contract by the appellees after the contract had been submitted to them with the survey provision included.

The conclusion to be drawn from the contractural provision providing for a survey, that the amount of acreage was intended to be a material element of the contract, is buttressed in this case by the undisputed testimony in the court below. The chancellor, over the objection of the appellees, and we think properly so, allowed Dr. Witmer to testify concerning the importance of the amount of acreage to the purchase and the fact that he wanted the provision "subject to survey" in the contract to protect himself.[4] The following extract is taken from the transcript:

---

4. As previously noted in Kriel, supra, this Court said: "Where the language of the contract is clear, plain, and free from ambiguity, that intention must be gathered from its four corners; but where it leaves the question in doubt, extrinsic evidence as to the surrounding circumstances and the situation of the parties is admissible to aid in its interpretation." 165 Md. 408.

MR. TAYLOR: "Well, could we narrow our attention to the part of the contract which deals with the provision of survey. It says, 'This contract is subject to survey of said property to be made by the buyer within thirty days from acceptance of this contract.' "

THE COURT: "All right. Sure."

MR. TAYLOR: "That, in my opinion, is an ambiguous term. I don't know what that means. I'd like to inquire from Mr. Witmer what he thinks it means or what he meant when he signed the contract. * * *."

* * *

THE COURT: "All right. Go ahead. Ask him."

MR. CLARK: "I'd like to note an objection, your Honor."

THE COURT: "Yes."

Q. "Mr. Witmer, would you tell the Court what your understanding of that term was when you signed the contract. A. Well, I requested that a phrase, I mean I, I didn't realize this would cause, cause the problems that it did, but I requested the real estate agent to put a phrase in that would give me depending on the, how many acres the survey showed, an option whether to purchase or not to purchase, or whether to negotiate. And I, I was willing to take the total expense, you know, it's by the buyer, I was going to pay for, pay for the survey, and, and this, this was my check, my vigilance on the contract. I had no way of, of knowing the acreage that was represented to me either by, other than accepting in good faith the acreage that, that was defined on the contract."

Accordingly, on the basis of the facts and circumstances of this case, we reverse the decree of the chancellor ordering specific performance of the contract of sale. Cf. *Perlmutter v. Bacas,* 219 Md. 406, 411, 149 A. 2d 23

(1959) ; *Glendale Corp. v. Crawford,* 207 Md. 148, 158, 114 A. 2d 33 (1955).

In reaching our conclusion that the contract in the instant case should be construed as a sale by the acre, we are mindful of the general principle of construction that there exists a presumption against sales in gross when the contract is ambiguous as to the parties' intention. See 1 A.L.R.2d 10, 20 and cases cited therein. *Galliher & Huguely, Inc. v. Fraher,* 26 S.E.2d 65 (Va. 1943) ; *Huffman v. Landes,* 177 S. E. 200 (Va. 1934) ; *Findlay v. State,* 238 S. W. 956 (Tex. Civ. App. 1921), aff'd 250 S. W. 651 (Tex. 1923) ; *Coppage v. Equitable Guarantee & T. Co.,* 102 A. 788 (Del. Ch. 1917) ; and *Norfolk Trust Co. v. Foster,* 78 Va. 413 (1884). Furthermore, we do not believe that this principle of construction is too burdensome upon the seller of real property for the reason stated in *Brodsky v. Hull, supra,* at 516 that, "* * * it is generally true that a purchaser is entitled to assume that the seller knows the acreage of the land which he is selling. Even the words 'more or less' accompaning a statement of quantity do not make the statement one of opinion. * * *" We would add that in this case, as in so many cases involving the sale of real property,[5] the sellers could have adequately protected themselves in the contract against such an unforeseen occurrence by the employment of counsel at an earlier stage. *See Worsham v. Pierce,* 251 So. 2d 896 (Fla. 1971).

> *Decree reversed; appellees to pay costs.*

5. See for example Yerkie v. Salisbury, 264 Md. 598, 287 A. 2d 498 (1972).