597 P.2d 600

G. Val SIMPSON and J. Ernestine Simpson, husband and wife, Plaintiffs-Appellants,

v.

A. J. JOHNSON and Ethel C. Johnson, husband and wife, Defendants-Respondents.

No. 12481.

Supreme Court of Idaho.

July 13, 1979.

Ward E. Hower, Cascade, for plaintiffs-appellants.

Dean E. Miller, Caldwell, for defendants-respondents.

BAKES, Justice.

This appeal involves a suit by the plaintiff appellants Simpsons, the purchasers of a lot in Cascade, against the defendant respondents Johnsons, the sellers of the real estate, for damages resulting from an error in the legal description in the deed to the property. The district court entered judgment in favor of the Johnsons, and the Simpsons brought this appeal. We affirm.

In the spring of 1973 the Simpsons were looking for a building lot in Cascade, Idaho. In March of that year Mrs. Simpson asked the Johnsons, who lived in Caldwell, whether they would consider selling their Cascade lot. The Johnsons indicated that they had not considered selling the lot but that they would think about it. Mrs. Johnson later called Mrs. Simpson and offered to sell the lot for $7,000. Mrs. Simpson, after briefly discussing the matter with her husband, accepted the offer. The Simpsons and the Johnsons agreed to meet a few days later at a Cascade restaurant in order to consummate the sale.

Prior to the consummation of the sale, the Simpsons examined the property from their automobile, but they did not actually walk on or around the property since it was covered with snow. Mrs. Simpson, who was employed at the treasurer's office at the Valley County courthouse, also examined the plat book, which indicated that the lot had a street frontage of 327.5 feet. The Simpsons intended to build a house on one half of the lot and sell the other half as a building lot. The record does not indicate that the Simpsons ever made this intention known to the Johnsons. However, Mrs. Simpson testified that Mrs. Johnson had stated that the property constituted approximately three and a half lots.

On March 20, 1973, the Simpsons and the Johnsons met at a Cascade restaurant and agreed on the terms of payment. During their conversation, Mr. Johnson asked the Simpsons if they would like to examine the property. Mrs. Simpson declined, stating, according to the Johnsons, "No, we don't need to. I work in the courthouse and know more about the property than you do." The couples then went to the office of Robert Remaklus, an attorney selected by the Johnsons. Mr. Remaklus prepared a standard warranty deed and apparently made arrangements for title insurance. At Remaklus' office some question arose about the location of a boundary line. At Remaklus' suggestion, he, the Johnsons and Mrs. Simpson (Mr. Simpson had returned to work) went to the courthouse and examined the plat in the assessor's office. According to the plat, the street frontage of the lot was 327.5 feet. After some further examination, Mr. Remaklus concluded that the legal description in the deed, which described the property as having a street frontage of 327.5 feet, was correct, and the deed was delivered to the Simpsons.

About six weeks later the Simpsons determined that the street frontage was in fact substantially less than 327.5 feet. A later survey determined that the actual frontage was about 267 feet. This narrow frontage, together with the odd shape of the property, made it impractical to divide the property into two lots.

The Simpsons notified the Johnsons of the error and sought an adjustment in the purchase price. In response the Johnsons offered to rescind the sale, but the Simpsons rejected that offer.

Prior to the discovery of the mistake the Simpsons had selected some house plans and a contractor, but construction had not begun and the Simpsons had not entered into any binding construction contracts. Mrs. Simpson was particularly fond of the lot and wanted to start construction as soon as possible. Also, at the time they rejected

the offer to rescind, the Simpsons were not aware of any suitable alternative lots. They have several children and at that time were living in a very small house. Unless construction started soon, the Simpsons feared the house would not be completed during the 1973 summer building season.

On April 30, 1974, the Simpsons filed suit against the Johnsons alleging failure of title, false representation and breach of warranty and seeking $3,000 as damages for the difference in value between the property as represented and the property actually conveyed. The Johnsons answered, denying that the plaintiffs were entitled to any money damages and, in a counterclaim, sought reformation to correct the error in the deed. The case was tried to the court on May 8, 1975.

At the trial a surveyor testified to the difference between the property as described in the deed and as it actually exists. However, the surveyor did not state the difference in quantity between the land described in the deed and the actual parcel of property.

The Simpsons testified that in their opinion the property described in the deed was worth $7,000, the purchase price, in March of 1973, but that the property actually acquired was worth only $4,000 at that time. Laurel Judy, a real estate loan officer at a bank in Cascade, was called as an expert witness for the Simpsons. He testified that in his opinion the property actually acquired by the Simpsons was worth $4,500 in March of 1973, but the property as described in the deed was worth $7,000 at that time. Both the Simpsons and Mr. Judy attributed most of the difference in value to the fact that two residences could not be built on the property actually acquired. Mr. Johnson testified that in his opinion the property was worth $12,000 and that they sold it for $7,000 only because the Simpsons caught him at a "weak time" when he was considering a move to Arizona.

The trial court ruled that there was no evidence of any fraud but that the evidence did disclose a mutual mistake. The court also found that there was no representation concerning the quantity of land involved and that the description was by metes and bounds. The court concluded that the Simpsons were not obligated to accept the offer to rescind but were entitled to sue for damages provided they could prove a loss. The court, however, found that the Simpsons had thoroughly examined the land and therefore knew or should have known what they were buying for $7,000. The court concluded:

"It further appears that the land they purchased was worth $7,000 at the time of purchase, although the evidence on this point was conflicting. In any event, the plaintiffs have the burden of proving that the value of the lot was less than $7,000. Those who testified concerning values were not truly expert witnesses. Evidence concerning value does not preponderate in favor of the plaintiffs. They have failed in their burden to prove damages."

Accordingly, the court denied the Simpsons' claim for money damages but ordered the deeds and other documents of title corrected.

The Simpsons then moved to amend the findings, conclusions and judgment. In denying the motion, the trial court acknowledged that both the Simpsons and the Johnsons, as owners of the property, were competent to testify concerning the value of the property, but the court gave little weight to their testimony, describing it as "a standoff." The court also rejected the testimony of Mr. Judy, the expert witness. While the court recognized that Mr. Judy may have been qualified to appraise the property, the court concluded that the evidence did not establish that Judy had made a credible appraisal of the property. The court concluded that it was not obligated to accept as true the uncontradicted testimony of an expert witness, and therefore ruled that the Simpsons had not carried their burden of proving damages by a preponderance of the evidence. The Simpsons brought this appeal from the trial court's order denying their post trial motions.

■ It is undisputed that there was an error in the legal description contained in the deed and that the street frontage in fact was substantially less than as represented in the deed. Issues concerning a mistake in the quantity of land are frequently analyzed in terms of whether the sale was in gross or by a specified quantity, such as by the acre or foot. Generally, where the sale is in gross the parties are considered to have assumed the risk of a deficiency or excess in the quantity of land conveyed. *See Continental Life Ins. Co. v. Murphy*, 55 Idaho 573, 44 P.2d 1112 (1935); *Seyden v. Frade*, 88 Nev. 174, 494 P.2d 1281 (1972). However, where the sale is by a specific quantity the purchaser is generally entitled to relief for the deficiency. *Dixon v. Morse*, 93 Idaho 448, 463 P.2d 284 (1970); *Lies v. Mulhall*, 31 Idaho 205, 169 P. 1165 (1918); *Witmir v. Bloom*, 265 Md. 173, 288 A.2d 323 (1972); *see generally* Annot. 1 A.L.R.2d 9 (1948).

■ In the instant case the sale was clearly in gross and not by the acre or by the frontage foot. Nevertheless, this does not necessarily mean that the Simpsons are not entitled to any relief on account of this deficiency. The rule against allowing relief for a deficiency where the sale is in gross is generally applied to situations where there has been an erroneous representation of the quantity of land encompassed by an accurate metes and bounds description, *see, e. g., Birch-Brook, Inc. v. Ragland*, 253 Ark. 161, 485 S.W.2d 225 (1972), and this rule has been held to be inapplicable where the metes and bounds description itself is in error and the seller is unable to convey all the property encompassed by that erroneous description. *Coppage v. King*, 96 Ga. App. 192, 99 S.E.2d 541 (1957); *Maxwell v. Redd*, 209 Kan. 264, 496 P.2d 1320 (1972). In our view the Simpsons' right to relief on the grounds of mutual mistake in the circumstances of this case depends on whether the error in the legal description affected a material element of the bargain. *See* Annot. 1 A.L.R.2d 9, 73 (1948).

■ Although the sale was in gross and the Simpsons did receive the particular parcel of land they intended to purchase, we nevertheless conclude that they did have a claim for relief. In our view the length of the lot's frontage was a material part of the sale. The record indicates that the Simpsons purchased the property with the intention of dividing it into two lots and selling one lot to help pay for the house they planned to build on the other. That plan, however, was frustrated by the deficiency in the lot's frontage. Although the Simpsons apparently never informed the Johnsons of their plan to divide the property, the record indicates that Mrs. Johnson told Mrs. Simpson that the property contained approximately three and one half lots. In short, the record indicates that the assumption that the property could be divided into separate lots underlay the entire transaction. We conclude, therefore, that the error in the legal description affected a material element of the bargain and that the trial court's conclusion that the Simpsons had a cause of action against the Johnsons grounded on mutual mistake is supported by the record.

■ Although the trial court decided the case under the equitable theory of mutual mistake, we believe the evidence also establishes a breach of the covenants of title, a theory which was also alleged in the Simpsons' complaint.[1] In the warranty deed the Johnsons convenanted "that they are the owners in fee simple of said premises . . . ." By this covenant of seisen the Johnsons assured that at the time of conveyance they were lawfully seized of the estate they purported to convey. *See* 6 R. Powell, The Law of Real Property § 905 (1968); Annot. 61 A.L.R. 10, 42 (1929).

---

1. The trial court approached the case in terms of an action for breach of contract. This case, however, involves an executed contract, not an executory contract; the contract had been executed and a deed delivered to the Simpsons. In these circumstances the contract is generally deemed to have been "merged" in the deed and the purchaser's rights are founded in the deed covenants, not the executed contract. *See* D. Dobbs, Handbook on the Law of Remedies § 12.9 at 844–45 (1973).

Here, it is undisputed that the Johnsons did not have title to all the property encompassed by the metes and bounds description in the deed. Generally, a material deficiency in the quantity of land described in the deed constitutes a breach of that covenant. *Knudson v. Weeks*, 394 F.Supp. 963 (W.D. Okla.1975); *Maxwell v. Redd, supra*; 7 G. Thompson, Commentaries on the Modern Law of Real Property, § 3178 (repl. vol. 1962). *But see* 6 R. Powell, *supra*, § 905, n. 8 (inaccurate description not breach).

 Having determined that the Simpsons were entitled to some relief, we must now decide whether they are entitled to the remedy they seek in this suit. The Simpsons rejected the Johnsons' offer to rescind and sought money damages for the deficiency. In general, courts have permitted purchasers in this type of case to recover damages for the deficiency in land, *see, e. g., Maxwell v. Redd, supra*; *Harris v. Axline*, 323 Mich. 585, 36 N.W.2d 154 (1969); *Gonzales v. Garcia*, 89 N.M. 337, 552 P.2d 468 (1976); D. Dobbs, Handbook on the Law of Remedies, § 12.9 (1973), although some courts in analogous situations have restricted the purchaser's remedy to rescission. *Dlug v. Wooldridge*, 538 P.2d 883 (Colo.1975); *Moonves v. Hill*, 134 Vt. 352, 360 A.2d 59 (1976). Under the facts of this case we believe the Simpsons' remedy was not limited to rescission but they were entitled to pursue an action for damages. Although the trial court decided the case on the equitable theory of mutual mistake, the record also establishes a breach of the covenant of seisen and an action for damages is ordinarily the proper remedy for a breach of that covenant. *See Maxwell v. Redd, supra*; 7 G. Thompson, *supra*, § 3181; D. Dobbs, *supra*.

 The Simpsons attempted at trial to establish by their own testimony that the market value of the actual property was $4,000 at the time of the sale and by their expert witness that its market value was $4,500. The trial court viewed the Simpsons' testimony as merely a standoff with the contradicting testimony by the Johnsons. Although the owners of property are competent to testify as to the value of their property, the weight to be given their testimony depends on their background, knowledge and experience. *Bancroft v. Smith*, 80 Idaho 63, 323 P.2d 879 (1958). The Simpsons had no particular background or expertise in the real estate business, although the record indicates that they had been shopping for a building lot in Cascade for some time, and the trial court did not err in giving little weight to their testimony.

 We do not believe that the trial court erred in rejecting the opinion of the expert witness. It is well established that the opinion of an expert is not binding on the trier of fact and, provided the trier of fact does not act arbitrarily, may be rejected even when uncontradicted. *See Roemer v. Green Pastures Farms, Inc.*, 97 Idaho 591, 548 P.2d 857 (1976); *Foreman & Clark Corp. v. Fallon*, 3 Cal.3d 875, 92 Cal.Rptr. 162, 479 P.2d 362 (1971). Although the expert may have been qualified, we do not believe the trial court erred in disregarding his testimony because apparently he did not believe that the opinion was based on a credible appraisal of the property, which, after all, is the prerogative of a trier of facts. *See Title & Trust Co. (Idaho Title Co.) v. Board of Equalization*, 94 Idaho 270, 486 P.2d 281 (1971). We therefore affirm the trial court's judgment that the Simpsons, having elected the remedy of damages rather than rescission, failed to meet their burden of proof in establishing damages.

Affirmed. Costs to respondent.

BISTLINE, J., and SCOGGIN and DOOLITTLE, JJ. Pro tem., concur.

SHEPARD, Chief Justice, specially concurring.

I concur in the result obtained by the majority opinion.

I believe, however, that under the circumstances of this case the determination by the trial court that plaintiffs were entitled to proceed on their theory of damages was error. The record is totally devoid of and appellants appear to concede an absence of any fraud, misrepresentation or overreaching on the part of the sellers-respondents Johnson. On the contrary, the record

appears clear that the appellants Simpson believed they had superior knowledge to the Johnsons regarding the tract of land and did so state at trial. The Simpsons were the initiating parties in the sale and the Johnsons appear to have been reluctant.

Under these circumstances, it appears to me inappropriate to impose on the sellers (Johnsons) a bargain different from that into which they entered; i. e., to force the Johnsons to sell the property for $4,000, rather than the $7,000 which they desired and demanded in their contract. The mistake as to the frontage of the lot was evidently mutual on the part of both parties and resulted from an error in the public records. As indicated in the majority opinion, upon discovery of the error in the description, the Johnsons offered to rescind the contract and return the money to the Simpsons. The Simpsons refused that offer. I believe at that point the Simpsons had made their election to keep the property, knowing of the deficiency in the description, and they should be deemed barred from a claim for damages resulting from no fault of the Johnsons. As indicated in *Barnosky v. Petteys*, 49 A.D.2d 134, 373 N.Y. S.2d 674 (1975), there was obviously no meeting of the minds of the parties to the contract and rescission under these circumstances was the more appropriate remedy.