899 P.2d 972

Carl Lorraine KOELKER and Constance Mae Koelker, husband and wife, Plaintiffs–Respondents,

v.

Robert B. and Donna TURNBULL, husband and wife, Defendants– Appellants,

and

Larry Seamann and Crystal Seamann, husband and wife; David A. Scherb and Jeanne L. Scherb, husband and wife; Seymour L. Sharp and Ellen S. Sharp, husband and wife; Michael Culver and Roberta Culver, husband and wife; and all other persons or entities claiming any right, title or interest in or to the real property including the well and other appurtenances commonly known as 900 Peninsula Road, Hope, Bonner County, Idaho, and more particularly described as follows: In the state of Idaho, County of Bonner, that portion of Government Lot 2 and 3, Section 12, Township 56 North, Range 1 East, Boise Meridian, Bonner County, Idaho, described as follows: Commencing at the northeast corner of said Government Lot 2; thence South 12 degrees 58'33", West, 1447.27 feet; thence North 49 degrees 37'57" West, 407.02 feet; thence North 52 degrees 18'41" West, 72.13 feet to the southeasterly right-of-way of the county road; thence along said right-of-way on curve to the right; said curve having a radius of 1940.0 feet, the chord being South 51 degrees 25'13" West, 175.67 feet, to the true point of beginning; thence South 50 degrees 21'43" East, 183.0 feet; thence South 39 degrees 38'17" West 300.00 feet; thence South 84 degrees 00'00" West 180.65 feet to the southeasterly right of way of the county road; thence northerly along said right-of-way a distance of 452.58 feet to true point of beginning together with a non-exclusive easement for access to Lake Pend Oreille, said easement being in the east half of the southeast quarter of Section 11, Township 56 North, Range 1 East, and Government Lots 1 and 2 of Section

12, Township 56 North, Range 1 East, Boise Meridian, Bonner County, Idaho, described as follows: Commencing at the intersection of the centerline of the "old" county road with the easterly extension of the south line of Lot 23, as shown on the plat of Buena Vista Beach as recorded in Book 1 of Plats, page 173, records of Bonner County, Idaho, said intersection being the true point of beginning: Thence North 14 degrees 52′ West along the centerline of said "old" county road 167.20 feet, thence North 34 degrees 58′06″ East along said centerline 25.98 feet; thence leaving said centerline North 67 degrees 20′50″ West along a line that is 10.0 feet South of a "yew" tree; 140.0 feet more or less to the shoreline of Lake Pend Oreille: Thence northeasterly along said shoreline to a line that is at right angles to and 60.0 feet northeasterly of the last described bearing (North 67 degrees 20′50″ West); thence South 67 degrees 20′50″ East 140.0 feet, more or less; thence South 34 degrees 20′50″ East 140.0 feet, more or less; thence South 34 degrees 58′60″ West, 79.83 feet; thence South 14 degrees 52′ East 155.59 feet; thence South 75 degrees 31′ West, 25.00 feet to the true point of beginning. The easement strip herein described shall be considered as appurtenant to the parcel of land first described herein, Defendants.

No. 21576.

Supreme Court of Idaho, Coeur d'Alene, April 1995 Term.

July 10, 1995.

Cooke, Lamanna, Smith, Cogswell & Elliot, Priest River, for appellants. Thomas E. Cooke argued.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for respondents. Michael B. Hague argued.

JOHNSON, Justice.

This is a covenant of title (also known as a covenant of seisin) case. We conclude that the grantors breached an express covenant of title by not revealing the existence of third parties' interests in the property pursuant to an unrecorded agreement which the grantors knew about and signed. We also conclude that the attorney fees the grantees incurred securing quiet title provide the measure of damages for the grantors' breach, although we remand for a redetermination of the amount of attorneys fees that qualify as damages.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

On May 30, 1990, Carl and Constance Koelker (the Koelkers) purchased a house and land (the property) from Robert and Donna Turnbull (the Turnbulls). At the closing on that date (the closing), the Turnbulls signed a warranty deed (the warranty deed) containing the following clause:

[T]he said Grantors [the Turnbulls] do hereby covenant to and with the said Grantees [the Koelkers] that they are the owners in fee simple of said premises; that they are free from all encumbrances except specific matters of record as shown above, and that they will warrant and defend the same from all lawful claims whatsoever.

Twelve days after the closing, the Turnbulls signed a quitclaim deed (the quitclaim deed) prepared by the title company which purported to transfer from the Turnbulls to the Koelkers a one-third interest in a well and water on the property, referring to an unrecorded water-sharing agreement (the water agreement). The water agreement, drawn up in 1977 by previous owners of the property (the previous owners), provided that the water and well on the property would be shared with two neighboring property owners (the neighboring owners). It was signed by the previous owners and the two neighboring owners, but never recorded. The Turnbulls added their signatures to the water agreement when they purchased the property in 1981.

The quitclaim deed stated that the Turnbulls conveyed

[a]n undivided one-third of their right, title, and interest in and to that water serving the residential premises owned by the Grantees [the Koelkers] herein from a well situated upon the following described premises, to wit: ... [the property].

TOGETHER WITH all wells, pumps, pump house, electrical services, pipes and easements used in connection therewith as evidenced by that certain Water Agreement dated January 17, 1977.

The title company recorded the quitclaim deed on June 13, 1990. The warranty deed made no reference to the water agreement.

The present owners of the neighboring properties (the present owners) eventually approached the Koelkers asserting rights to the well and water pursuant to the water agreement. In response, the Koelkers filed a quiet-title action against the Turnbulls, the previous owners, the present owners, the neighboring owners, and any unknown persons claiming an interest in the property. The Koelkers brought an additional claim against the Turnbulls, arguing that the existence of third party claims to the well and water, as well as the execution and recording of the quitclaim deed, constituted a breach of a covenant of title made in the warranty deed.

Except for the Turnbulls, no one appeared in the quiet-title action and the trial court entered default judgments against the previous owners, the present owners, the neighboring owners, and the unknown parties. The Turnbulls disclaimed any interest in the property, and the trial court also entered judgment against them on the quiet-title claim.

The Turnbulls disputed, however, the Koelkers' claim for damages for breach of the warranty deed and moved for summary judgment. The trial court held that the Turnbulls breached an express covenant of title in the warranty deed, entitling the Koelkers to recover their costs and attorney fees as damages. The Turnbulls appealed.

## II.

## THE TURNBULLS BREACHED AN EXPRESS COVENANT OF TITLE CONTAINED IN THE WARRANTY DEED.

The Turnbulls assert that they did not violate a covenant of title because no one had a valid claim for use of the well against the Koelkers since the water agreement was unrecorded. We disagree.

■ The warranty deed contained an express covenant of title. In *Simpson v. Johnson*, 100 Idaho 357, 597 P.2d 600 (1979), the Court held that a grantor makes a covenant of title (there referred to as a covenant of seisin) by claiming that the grantor is "lawfully seized" of the property being transferred. *Id.* at 361, 597 P.2d at 604. Thus, the Turnbulls made an express covenant of title in the warranty deed by stating that they owned the property in fee simple and that it was "free from all encumbrances except specific matters of record as shown above."

The general issue posed in a covenant of title case is whether "at the time of the conveyance [the grantors] were lawfully seized of the estate they purported to convey." *Id.* The Court further elaborated on the requirements for sustaining a claim for breach of a covenant of title in *Roper v. Elkhorn at Sun Valley*, 100 Idaho 790, 605 P.2d 968 (1980) stating that a grantee must prove that a third party had a valid interest in the property.

[I]t is axiomatic that the plaintiff in an action for breach of covenants of title has the burden of proving that he was evicted or prevented from using the conveyed property by a person asserting title paramount to that of the plaintiff's.... "[A] covenant of warranty of title does not extend to apparent or unfounded titles in land, but only against hostile titles, superior in fact to those of the grantor." 20 Am.Jur.2d, [*Covenants, Conditions, & Restrictions*], § 56. [The grantees'] inability to prove that there was in fact a valid easement in a third party's favor at the time the [grantees] purchased the property from the [grantor] was fatal to their claim that [the grantors] breached the warranties of title made to [the grantees] at the time of the conveyance.

*Id.* at 794–95, 605 P.2d at 972–73 (citations omitted).

At first blush, it might appear that there was no breach of the covenant of title because all the defendants defaulted in the quiet-title action and, therefore, the Koelkers were not "evicted or prevented from using the conveyed property." *Id.* at 794, 605 P.2d at 972. The fact that the Koelkers did not lose any interests in the well or water is not dispositive, however, as a full reading of *Roper* makes clear.

At issue in *Roper* was whether the grantee was prevented from using the property *by a third party with a valid interest.* In *Roper*, even though the grantees had ceded part of their property to a third party claiming an easement, the Court still evaluated the legitimacy of the claimed easement, ultimately finding it invalid. Here, because the Koelkers secured quiet title through default judgments, there was no evaluation of the validity of the third parties' claims to the water and well in the quiet-title action. Therefore, just as in *Roper*, to decide if there was a breach of the covenant of title we must determine whether the third parties had enforceable claims on the Koelkers' well and water. Whether a grantee is or is not evicted from the property is important only to the extent

it reflects a legal determination of whether third parties had valid interests in the property.

The Turnbulls assert that they did not violate the covenant of title because any claims to the water and well were unenforceable against the Koelkers due to the unrecorded status of the water agreement on the closing date. *See* I.C. § 55–812 (1994) (providing unrecorded conveyance is void against a subsequent bona fide purchaser whose conveyance is recorded). As the Court noted in *Roper*, however, the covenant of title is breached when there are " 'hostile titles, superior in fact to those of the *grantor*.' " 100 Idaho at 794, 605 P.2d at 972 (quoting 20 Am.Jur.2d *Covenants, Conditions, & Restrictions* § 56 (1965)) (emphasis added). Thus, the proper question is whether at the time of conveyance the present or previous owners had legitimate claims against the Turnbulls, not the Koelkers.

■ As the trial court held in entering summary judgment for the Koelkers, because the Turnbulls were signatories to the water agreement, the present and previous owners had valid interests in the well and water which were enforceable against the Turnbulls at the time of conveyance. Failing to disclose those interests was a breach of the covenant of title.

### III.

### THE KOELKERS ARE ENTITLED TO DAMAGES IN THE FORM OF THEIR ATTORNEY FEES INCURRED SECURING QUIET TITLE.

The Turnbulls assert that it was improper for the trial court to award attorney fees against them. We disagree because the attorney fees that were the basis for the judgment were merely the measure of damages the trial court employed for breach of the covenant of title.

■ Although the measure of damages for a violation of a covenant of title is normally the value of the property lost to a third party, the Court has also awarded as damages the grantee's attorney fees incurred as a result of the breach. For example, in

*Madden v. Caldwell Land Co.*, 16 Idaho 59, 72, 100 P. 358, 362 (1909), the Court held that damages for breach of the covenant of title included the grantee's attorney fees expended in her unsuccessful quiet-title action against the third party. *See also Flynn v. Allison*, 97 Idaho 618, 622, 549 P.2d 1065, 1069 (1976). Therefore, since they did not lose any property interest, the costs and attorney fees incurred by the Koelkers to quiet title provide the measure of their damages.

■ Idaho Code § 6–402, which protects a defaulting defendant in a quiet-title action from responsibility for costs and attorney fees, and I.R.C.P. 54(e)(4), which governs the award of attorney fees in default actions, are not relevant because the issue is not one of attorney fees as such, but of damages for breach of the covenant of title which merely happen to be measured by attorney fees.

The trial court, sitting as factfinder, found that the Koelkers' damages for the Turnbulls' breach included the costs incurred in quieting title against the previous and present owners, as well as the unknown parties. The Koelkers became aware of transfers of interest under the water agreement to known parties. Therefore, it was reasonable for them to question whether there were conveyances to unknown parties. The Koelkers' expenses for quieting title against the known and unknown third parties were properly recoverable as damages.

■ A review of the record reveals, however, that the trial court also included in the damages award the attorney fees the Koelkers incurred litigating the breach of covenant of title claim which forms the basis of this appeal. The only attorney fees which are recoverable as damages are those which are directly attributable to quieting title in the property. Just as in any breach of contract case, the attorney fees subsequently incurred in enforcing the covenant and collecting damages are themselves not recoverable as damages. Accordingly, we remand for a redetermination of damages.

## IV.

### CONCLUSION.

We affirm the trial court's summary judgment and remand the case to the trial court for a redetermination of damages.

We award costs on appeal, but not attorney fees, to the respondents.

McDEVITT, C.J., and TROUT, SILAK, and SCHROEDER, JJ., concur.