152 P.3d 638

**J. Michael "Doc" HOLLADAY, Plaintiff–Appellant,**

**v.**

**Mark LINDSAY, an individual, Defendant–Respondent.**

**No. 31894.**

Court of Appeals of Idaho.

Nov. 1, 2006.

Review Denied Feb. 20, 2007.

Runft & Steele Law Offices, Boise, for appellant.

Mark Lindsay, respondent, did not participate on appeal.

## AMENDED OPINION

## THE COURT'S PRIOR OPINION DATED AUGUST 21, 2006 IS HEREBY WITHDRAWN

LANSING, Judge.

J. Michael "Doc" Holladay appeals the district court's determination that he is entitled to only simple interest, not compound interest, as prejudgment interest on the principal amount awarded to him in this action. He also appeals the amount of attorney fees awarded by the district court.

## I.

## BACKGROUND

Holladay, who played bass guitar for the musical group "Paul Revere and the Raiders" from September 1963 to November 1965, sued Mark Lindsay and others for breach of contract, fraud, unjust enrichment, conversion, and racketeering related to Holladay's share of royalties from several sound recordings made in 1964. Lindsay did not respond to Holladay's complaint, and a default judgment was entered against him. The other defendants settled and are not parties to this appeal.

Holladay sought an award that would include compound prejudgment interest on the claimed principal. The district court determined, however, that Holladay was entitled to only simple interest on the principal sum of $5,028.75. This award was then trebled pursuant to the Racketeering Act, Idaho Code § 18–7805(a), bringing the total damage award to $78,243.30. Holladay also requested attorney fees in the amount of $130,715.00 and costs of $2,305.29. The court awarded $5,000 and $410.81 respectively. Holladay now appeals

## II.

## ANALYSIS

### A. Compound Interest

#### 1. Interest under I.C. § 28–22–104(1)

■■■ Holladay first contends that he is entitled to compound prejudgment interest on his damage award pursuant to I.C. § 28–22–104(1). That statute provides for the award of prejudgment interest at a rate of 12 percent on "[m]oney after the same becomes due." Prejudgment interest may be awarded under this statute where the amount of liability is liquidated or capable of ascertainment by a mathematical calculation. *Dillon v. Montgomery*, 138 Idaho 614, 617, 67 P.3d 93, 96 (2003); *Stoor's Inc. v. Dep't of Parks & Recreation*, 119 Idaho 83, 86, 803 P.2d 989, 992 (1990). Holladay's assertion that he may recover compound interest pursuant to the statute is incorrect; the Idaho Supreme Court has held that prejudgment interest under I.C. § 28–22–104(2) is *not* to be compounded. *Doolittle v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 805, 814, 919 P.2d 334, 343 (1996). Therefore, the district court did not err when it held that Holladay was entitled to simple prejudgment interest, but not compound interest, under I.C. § 28–22–104.

#### 2. Compound interest as element of damages

Holladay next argues that he is entitled to compound interest as an item of damages on his claim that Lindsay was unjustly enriched by breaching a fiduciary duty and retaining Holladay's share of royalties accruing since September 1964. Holladay asserts that Lindsay gained the long-term benefit of the principal amount of $5,028.75, which included ever-increasing compounding returns. He maintains therefore that in order to ensure that Lindsay retains none of this unjust enrichment, interest on the principal must be compounded to reflect a reasonable return.

■ Generally speaking, courts are averse to awards of compound interest, *see* CHARLES T. MCCORMICK, DAMAGES, § 53, at 211–12 (1935), and so far as we can discern, there is no published appellate decision in Idaho that has allowed compounding of prejudgment interest. There may be some support for Holladay's proposition, however, in the law of unjust enrichment. The essence of a cause of action for unjust enrichment is "the claim that the defendant has been enriched by the plaintiff and that it would be inequitable for the defendant to retain that benefit without compensating the plaintiff for the value of the benefit." *Gillette v. Storm Circle Ranch,* 101 Idaho 663, 666, 619 P.2d 1116, 1119 (1980). The measure of damages for unjust enrichment is "the value of the benefit bestowed upon the defendant which, in equity, would be unjust to retain without recompense to the plaintiff." *Id.; Nielson v. Davis,* 96 Idaho 314, 528 P.2d 196 (1974); *Cont'l Forest Prod., Inc. v. Chandler Supply Co.,* 95 Idaho 739, 518 P.2d 1201 (1974). The compensation recoverable by the plaintiff may include profits that the defendant acquired through use of the misappropriated property as illustrated by *Basic American, Inc. v. Shatila,* 133 Idaho 726, 746, 992 P.2d 175, 195 (1999), where our Supreme Court held that the unjust enrichment from misappropriation of trade secrets was the profits derived from use of those trade secrets.

■ Logically, this principle of disgorging all unjustly obtained benefits from a defendant could include an award of compound prejudgment interest where it is proved that the defendant received compounded returns on the ill-gotten principal. This is illustrated by a commentator in the following example positing a fiduciary who had "borrowed" funds to make an investment, then returned the original funds but kept the profits he made with it.

[I]t seems clear that if the fiduciary must account for profits he has gained by the use of the plaintiff's money, he must likewise account for interest he gained by its use .... the principle in such cases is the prevention of unjust enrichment. If the fiduciary makes profits, or gets interest on the money he wrongly takes from the beneficiary, he must be held liable not only for the profits or interest he makes on such funds, but also for interest on those profits or the interest itself. In no other way can his enrichment be taken from him. Hence, any claim based upon unjust enrichment or restitution, rather than upon compensation or damages, not only permits pre-judgment interest, but also permits an award of compound interest.

DAN B. DOBBS, REMEDIES, § 3.5, at 169–170 (1973). Also instructive is the RESTATEMENT (SECOND) OF TRUSTS § 207 (1959) discussing interest recoverable from a fiduciary who has committed a breach of trust by misappropriating funds:

(1) Where the trustee commits a breach of trust and thereby incurs a liability for a certain amount of money with interest thereon, he is chargeable with interest at the legal rate or such other rate as the court in its sound discretion may determine, but in any event he is chargeable with interest actually received by him or which he should have received.

(2) Where the trustee is chargeable with interest, he is chargeable with simple and not compound interest, unless

(a) he has received compound interest, or

(b) he has received a profit which cannot be ascertained but is presumably at least equal to compound interest, or

(c) it was his duty to accumulate the income.

This reveals three important principles pertinent to our discussion: (1) interest may be awarded at a rate within the trial court's sound discretion; (2) the defendant is only liable for interest he actually received or should have received from the misappropriated money; and (3) compound interest is not ordinarily allowed unless the defendant actually received compound interest or the defendant's profit is unascertainable but is presumably at least as much as compound interest would yield. The third point reflects the unjust enrichment doctrine requiring disgorgement of profits received by the defendant, and it indicates that the rate of

compounded interest should be based upon the defendant's actual or presumed gain.

■ The presumption of earnings aids the plaintiff where a lack of information from the defendant makes it impossible for the plaintiff to show the defendant's actual profits. Such a circumstance was addressed in *Brown v. Tydings,* 149 Md. 22, 130 A. 337 (1925), where the administrator of an estate withdrew various sums from the estate's account for his own use. In time, he repaid these principal amounts back to the estate, along with interest at the rates that the money would have earned if it had remained in the estate's account. The plaintiff argued that the defendant should be additionally required to disgorge any profits that he may have made by the use of the trust funds. *Id.* at 339. Toward this end, the defendant was ordered to produce information about the amount he had earned, but he was unable to do so. The court nevertheless awarded the plaintiff compound interest at the rate of 6 percent[1] as:

> a substitute for the appropriation of actual profits made, or presumed to have been made, by the use of the trust funds, when lack of information from the fiduciary prevents determination of the amount to be appropriated as profits. It is not that profits equal to compound interest are shown.... The allowance is made in the absence of proof, and ... can be avoided by the fiduciary only by fairly disclosing the use made of the money.

In a case factually similar to the one before us, *Lexington Ins. Co. v. Abington Co.,* 621 F.Supp. 18, 19 (E.D.Pa.1985), the defendant failed to remit to the plaintiff certain sums to which the plaintiff was entitled by contract. The court determined that the plaintiff should be awarded compound interest on the principal because "prevention of unjust enrichment can only be ensured by requiring defendants to account for the amounts they could have realized through investment at the market rate." *Id.* at 22. The court set the rate of damages at the market rate of interest, which reflected the amount that the defendant had likely made or could have made through investment of

the wrongfully retained funds. The court said that "[t]o apply the statutory rate [which was less than the market rate] would be to allow the defendants, who had full use of the funds for the entire period, to have invested the wrongfully-detained funds at the market rate of interest and be required to pay back the principal and only [the statutory rate]." *Id.* at 21. Thus, the court refused to apply the statutory rate of interest because it did not properly reflect the amount by which the defendant had likely been unjustly enriched.

■ The law may thus aid a plaintiff by allowing recovery of a defendant's "presumed" profits or interest from misappropriated funds, but it is the plaintiff's burden to submit evidence to support an award that reasonably approximates the defendant's actual or presumed gains. A failure of such proof precludes recovery, as illustrated in *Gillette.* There, the plaintiff, who leased some farmland, planted crops in the fall, intending to harvest them in the spring. Before harvest, the landlord sold the land to another individual. The plaintiff sued, alleging that the landlord had been unjustly enriched by his farm work, and the trial court awarded damages for the amount that the work had cost the plaintiff. The Supreme Court reversed these damages, however, because proof of plaintiff's cost of doing the farm work did not establish the value of any benefit the landlord may have received. The landlord did not harvest the crops, and so the only benefit that he could have received by plaintiff's work was enhancement in market value of the property, but the plaintiff presented no evidence on this issue. The Supreme Court noted:

> Unjust enrichment is an equitable doctrine and is inapplicable where the plaintiff in an action fails to provide the proof necessary to establish the value of the benefit conferred upon the defendant. Although damages need not be proven with mathematical precision, the damages, i.e., the value of any benefit unjustly received by the defendant in an action based upon unjust enrichment, must be proven to a reasonable certainty.

---

1. It is unclear how the court selected the 6 percent rate.

*Gillette,* 101 Idaho at 667, 619 P.2d at 1120 (citations omitted).

 In the present case, Holladay may have been unable to gain information about any earnings that Lindsay received on the misappropriated royalties. If so, the equitable principles discussed above could enable the trial court to award compound prejudgment interest at a rate that would reasonably approximate what Lindsay presumably made or could have made through investment of the retained royalties. However, Holladay did not provide the court with evidence from which such an amount could be calculated. Although Holladay submitted the affidavit of an economist setting out interest computations, the economist did not profess to use the market rate or rates [2] of interest that Lindsay presumably could have received. Instead, the economist based his calculations on the "legal rate of 12 percent" pursuant to I.C. § 28–22–104.[3] Therefore, Holladay's evidence was inadequate to show any actual or presumed benefit conferred upon Lindsay.

Further, even if Holladay had submitted evidence based upon the market interest rate, in our view this would not be an appropriate case for an award of compound interest. The doctrine allowing an award of presumed interest is intended to compensate the plaintiff when the defendant likely received some interest or profits from misappropriated assets but it is impossible for the plaintiff to prove the amount. Here, there is simply no likelihood that Lindsay invested or received significant earnings from the royalties that were withheld from Holladay. According to Holladay's evidence, Lindsay did not receive the $5,028.75 in withheld royalties all at once, but in a dribble of small payments over a period of thirty-two years. We see no basis to presume that Lindsay invested these small sums. In this circumstance, an award of compound interest is less likely to dispute actual ill-gotten profits from Lindsay than it is to give a windfall to Holladay. There is no reason to believe that the 12 percent simple prejudgment interest awarded by the district court is inadequate to compensate Holladay for Lindsay's long-term retention of the royalties.

### 3. Lack of defense to Holladay's claim for compound interest

Lastly, we must address Holladay's contention that the district court should have granted the requested compound interest because Lindsay presented no defense to the claim. Lindsay was personally served with a notice of hearing on the damages claim and affidavits setting forth Holladay's calculation of damages, including compound interest, before the default judgment was taken, but Lindsay made no response and never appeared in the action.

 When a defendant has defaulted, the plaintiff generally has no obligation to introduce evidence in support of the allegations of the complaint. *Olson v. Kirkham,* 111 Idaho 34, 37, 720 P.2d 217, 220 (Ct.App. 1986). On default, "all well pleaded factual allegations in the complaint are deemed admitted," *Cement Masons'-Employers' Trust v. Davis,* 107 Idaho 1131, 1132, 695 P.2d 1270, 1271 (Ct.App.1985), and therefore, if the complaint sufficiently alleges facts upon which the plaintiff would be entitled to damages, the plaintiff may recover those damages without proving any additional facts.[4] *Olson,* 111 Idaho at 37, 720 P.2d at 220.

 We nevertheless conclude that the district court did not err in denying Holladay's claim for compound interest at a rate of 12 percent. The rule that all well-pleaded factual allegations in a complaint are accepted as true on an application for a default

---

**2.** Holladay claims entitlement to interest accruing from 1964 to 2005. The market rate of interest undoubtedly varied throughout that period.

**3.** The interest rate prescribed in I.C. § 28–22–104 is not intended as a rate to be used to calculate damages; it is a legislatively prescribed rate to compensate the plaintiff for loss of use of money once the damage amount has been computed. If, however, prejudgment interest has been awarded *as an element of damages,* the plaintiff would not be entitled to the statutory prejudgment interest in addition. To grant both would be to allow a double recovery.

**4.** If additional evidence is needed, however, the court may conduct such hearings as it deems necessary. I.R.C.P. 55(b)(2).

judgment does not require that the trial court accept the plaintiff's legal assumptions or conclusions or surmise facts favorable to the plaintiff that are not actually alleged. Here, Holladay's factual allegations and evidence did not make a prima facie showing of entitlement to compound interest at a rate of 12 percent because he presented no allegation or evidence showing that interest at this rate was or likely could have been received by Lindsay on the misappropriated funds. Therefore, even assuming the truth of all of Holladay's factual allegations, the trial court did not err in denying this claim.

## B. Attorney Fees

■ In his complaint, Holladay requested an award of $5,000 in attorney fees in the event of a default. After the default was entered, however, Holladay requested $130,715 in attorney fees, based on hours expended in the case. The district court awarded only $5,000, citing I.R.C.P. 54(e)(4), which provides that "[a]ny award of attorney fees in default judgments ... shall not exceed the amount prayed for in the complaint." Holladay contends that he is entitled to a greater fee award under several statutes and as an element of damages.

Where a defendant has defaulted, attorney fees may be awarded to the plaintiff if they are provided for by contract or by a statute other than I.C. § 12–121. I.R.C.P. 54(e)(1). Holladay contends that he is entitled to attorney fees under Idaho's Racketeering Act, I.C. § 18–7805; under the Consumer Protection Act, I.C. § 48–608(4); and under I.C. § 12–120(3) which authorizes an attorney fee award in litigation arising from a commercial transaction. Holladay asserts that because these statutes are applicable, the provision of I.R.C.P. 54(e)(4), limiting the attorney fees awardable upon a default, is inapplicable. However, the provisions of I.R.C.P. 54(e) apply to any claim for attorney fees made pursuant to *any* statute, unless those provisions are inconsistent with the statute. I.R.C.P. 54(e)(8). Nothing about the district court's application of the limiting provisions of I.R.C.P. 54(e)(4) is inconsistent with the statutes cited by Holladay.

■ Holladay also argues that the greater sum should be awarded not in addition to

damages, but as an *element* of those damages, regardless of any statute or rule related to the award of attorney fees. In some circumstances, Idaho law does allow attorney fees to be awarded as damages, but this is ordinarily limited to attorney fees incurred outside of the litigation against the defendant in which the award is sought. For example, in *Koelker v. Turnbull*, 127 Idaho 262, 899 P.2d 972 (1995), the plaintiffs sued the defendants for breach of the covenant of title in a contract for the plaintiffs' purchase of real property. After this purchase, third parties asserted interests in the property, and the plaintiffs incurred attorney fees in an action to quiet title against the third-party claimants. The trial court awarded these attorney fees against the defendants on the cause of action for breach of covenant. The Idaho Supreme Court affirmed, holding that the costs of the lawsuit against the third parties were a proper measure of damages, regardless of the provisions of I.R.C.P. 54(e) or statutory provisions disallowing attorney fees in the action for breach of the real estate contract. The Supreme Court refused, however, to include in this sum the attorney fees directly related to the lawsuit against the defendants. The Court said:

> The only attorney fees which are recoverable as damages are those which are directly attributable to quieting title in the property. Just as in any breach of contract case, the attorney fees subsequently incurred in enforcing the covenant and collecting the damages are themselves not recoverable as damages.

*Koelker*, 127 Idaho at 266, 899 P.2d at 976.

In this case, Holladay's request for attorney fees cannot be seen as damages. They were not expenses incurred independent of the present lawsuit; they are expenses incurred in the present litigation to recover other damages from Lindsay. Therefore, the award of attorney fees is governed by I.R.C.P. 54(e), which the district court correctly applied.

## III.

## CONCLUSION

The district court's judgment that Holladay was entitled to only simple interest and

$5,000 in attorney fees is affirmed. Because Holladay has not prevailed, we award no costs on appeal.

Chief Judge PERRY and Judge GUTIERREZ concur.

